**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, Plaintiff, | Case No.: CA 08 217 |
| vs. | |
| M.S.I. HOLDINGS, LLC and DAVID TAPALIAN, Defendant. | |

## COMPLAINT

Plaintiff Commonwealth Land Title Insurance Company ("Commonwealth") as and for its Complaint against M.S.I. Holdings, LLC ("MSI") alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Commonwealth is a corporation organized and existing pursuant to the laws of Nebraska, with its principal offices in Virginia.

2. Defendant MSI is a limited liability company organized and existing pursuant to the laws of Rhode Island, with its principal office in Providence, Rhode Island.

3. Defendant David Tapalian is a natural person who is a member of MSI and not a citizen of either Nebraska or Virginia.

4. This Court has jurisdiction over this matter based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, because Commonwealth does not share common state citizenship with MSI or David Tapalian and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue lies in this district under 28 U.S.C. § 1391(b), because MSI is a resident of and transacts business in this District, and a substantial part of the events giving rise to the claims for relief occurred in this District.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

6. In or about February of 2006, Commonwealth approached MSI through its principal member, David Tapalian, about the possibility of leasing the Second Floor of 100-110 North Main Street in Providence, Rhode Island (the "Premises").

7. Over the next several months, the parties had extensive discussions and negotiations regarding the Premises and the terms of a potential Lease.

8. During the course of these discussions and negotiations, David Tapalian personally and on behalf of MSI made numerous representations and promises regarding the Premises and his plans for the Premises. Those representations included the following:

a. MSI and/or Tapalian would renovate the Premises and make it "Class A" office space;

b. any renovations to the exterior of the building or other portions of the building that MSI intended to perform would be finished prior to Commonwealth's occupancy;

c. MSI and/or Tapalian were willing to expend sufficient capital to make the necessary renovations in order to convert the Premises into Class A office space;

d. MSI and/or Tapalian had access to sufficient historic tax credits to ensure that the appropriate renovations would be made in order to convert the Premises into Class A office space;

e. Tapalian was moving his own law office into the same building and would take residence in the building before Commonwealth;

f. that the building would be fully occupied with tenants on every floor; and

g. that MSI and/or Tapalian would ensure Commonwealth's needs and concerns as a tenant were timely and appropriately addressed.

9. Each of the foregoing representations was false when made.

10. On or about September 27, 2006, Commonwealth and MSI entered into a lease for the Premises (the "Lease").

11. On or about January 2007, Commonwealth moved into the Premises and immediately began experiencing significant problems with the Premises.

12. On the date of occupancy, the Premises was not Class A office space as promised. The quality of construction of the Premises, the exterior of the buildings and the common areas was substandard. The building was infested with rodents and completely unsuitable for Commonwealth's purposes (i.e. maintaining a business office).

13. On the date of occupancy, the Premises was not fully occupied by other tenants. Nor had Tapalian moved his law office into the building. Other than the leased Premises on the Second Floor, the building was in a state of disrepair and/or renovation and otherwise not fit for occupation.

14. MSI and/or Tapalian did not complete their intended renovations of the building prior to Commonwealth's occupancy. As a result, the condition of the Premises and the common areas was unsafe, hazardous to human health and completely unsuitable for Commonwealth's purposes.

15. Upon information and belief, MSI was unable to obtain a commitment of sufficient historic tax credits and/or unwilling to expend sufficient funds to appropriately renovate the building or to qualify for sufficient historic tax credits.

16. Commonwealth repeatedly contacted MSI and requested that it address and rectify myriad issues and problems relating to the Premises.

17. MSI repeatedly failed to adequately correct the issues and problems raised by Commonwealth.

18. An example of MSI's inadequate response to the issues and problems with the Premises raised by Commonwealth occurred in January 2007 after sandblasting and other work on the exterior of the building resulted in clouds of lead dust floating throughout the premises and a deposit of lead dust throughout the interior of the Premises. When Commonwealth complained of the smell of lead in the air, MSI agreed to send someone to perform air sampling, but the person hired by MSI set up to test and never came back to test the results. Commonwealth was forced to retain a licensed environmental consulting firm to test the Premises and that firm found the presence of lead dust in the Premises at levels classified as a "Significant Environmental Lead Hazard" under Rhode Island law. In response, MSI dispatched its property manager and some construction workers – upon information and belief none of whom were appropriately licensed or trained to work with hazardous materials – and they cleaned up the dust with what appeared to be Windex and paper towels. Several of Commonwealth's employees subsequently underwent blood testing and were found to have elevated blood lead levels. As a result, Commonwealth was forced to relocate to temporary office space for a period of time. This condition also is not indicative of Class A office space.

19. Another example of the substandard condition of the Premises and MSI's inadequate response is the infestation of rodents, which defecate on Commonwealth's business files, papers and furniture at night and are inherently unsanitary. When this

condition was brought to MSI's attention, it was not adequately addressed. This condition also is not indicative of Class A office space.

20. There also has been flooding at the Premises which damaged Commonwealth's property. The HVAC system has never worked properly and is insufficient to provide for the comfortable occupation of the Premises, despite MSI's efforts to correct the situation. Flooding and poorly functioning HVAC are not indicative of Class A office space.

21. Numerous other deficient conditions that have not been adequately addressed by MSI exist at the Premises and are not indicative of Class A office space.

22. Due to the overwhelming number, severity and recurring natures of the problems with the Premises combined with MSI's unwillingness to adequately address the problems and/or bring the Premises up to Class A office space standards, and Commonwealth's own fundamental inability to rectify the problems at its own expense, on May 31, 2008 Commonwealth was forced to vacate and abandon the Premises.

**FIRST CLAIM**

**Fraudulent Inducement**

23. Commonwealth repeats and realleges each and every allegation set forth in paragraphs 1 through 22, as though fully set forth at length.

24. During the discussions and negotiations leading up to the execution of the Lease, MSI and/or David Tapalian knowingly and intentionally made false representations and/or omissions of one or more facts material to the Lease and Commonwealth's decision to enter into the Lease.

25. MSI and/or David Tapalian intended that Commonwealth would rely on the false representations.

26. Commonwealth reasonably relied on the false representations in agreeing to the Lease.

27. As a result of its reliance on the false representations, Commonwealth has been damaged in an amount to be determined at trial.

## SECOND CLAIM

## Breach of Contract

28. Commonwealth repeats and realleges each and every allegation set forth in paragraphs 1 through 27, as though fully set forth at length.

29. Commonwealth and MSI entered into the Lease.

30. Commonwealth substantially performed all of its obligations under the Lease and stood ready to perform any remaining obligations.

31. MSI, through acts of both commission and omission, repeatedly breached the Lease, failed to provide habitable premises and failed to correct material deficient conditions at the Premises.

32. As a result of MSI's breach, Commonwealth has been damaged in an amount to be determined at trial.

## THIRD CLAIM

## Breach of Implied Covenant of Good Faith and Fair Dealing

33. Commonwealth repeats and realleges each and every allegation set forth in paragraphs 1 through 32, as though fully set forth at length.

34. The Lease contains an implied covenant of good faith and fair dealing.

35. MSI, through acts of both commission and omission, breached the covenant of good faith and fair dealing and deprived Commonwealth of the benefit of their bargain under the Lease.

36. As a result of MSI's breach, Commonwealth has been damaged in an amount to be determined at trial.

## FOURTH CLAIM

## Constructive Eviction

37. Commonwealth repeats and realleges each and every allegation set forth in paragraphs 1 through 36, as though fully set forth at length.

38. Through the intentional acts or omissions of MSI, substantially interfered with the Commonwealth's beneficial use and enjoyment of the Premises.

39. As a result of the acts and omissions of MSI, Commonwealth was forced to abandon the Premises.

40. As a result of it's constructive eviction from the Premises by MSI, Commonwealth has been damaged in an amount to be determined at trial.

**FIFTH CLAIM**

**Intentional Misrepresentation**

41. Commonwealth repeats and realleges each and every allegation set forth in paragraphs 1 through 40, as though fully set forth at length.

42. During the discussions and negotiations leading up to the execution of the Lease, MSI and/or David Tapalian knowingly and intentionally made false representations and/or omissions of one or more facts material to the Lease and Commonwealth's decision to enter into the Lease.

43. MSI intended that Commonwealth would rely on the false representations.

44. Commonwealth reasonably relied on MSI's false representations in agreeing to the Lease.

45. As a result of its reliance on MSI's false representations, Commonwealth has been damaged in an amount to be determined at trial.

**SIXTH CLAIM**

**Negligent Misrepresentation**

46. Commonwealth repeats and realleges each and every allegation set forth in paragraphs 1 through 45, as though fully set forth at length.

47. During the discussions and negotiations leading up to the execution of the Lease, MSI and/or David Tapalian made representations and/or omissions of one or more facts material to the Lease and Commonwealth's decision to enter into the Lease that were false under facts and circumstances that reasonably should have led MSI and/or David Tapalian to know of the falsity of the representations.

48. MSI intended that Commonwealth would rely on its representations.

49. Commonwealth reasonably relied on MSI's misrepresentations in agreeing to the Lease.

50. As a result of its reliance on MSI's false representations, Commonwealth has been damaged in an amount to be determined at trial.

**SEVENTH CLAIM**

**Declaratory Judgment (28 U.S.C. § 2201, *et seq.*)**

51. Commonwealth repeats and realleges each and every allegation set forth in paragraphs 1 through 50, as though fully set forth at length.

52. Commonwealth contends that MSI's fraudulent inducement of Commonwealth renders the Lease void, invalid and/or unenforceable. Commonwealth further contends that the physical condition of the Premises, MSI's serial breaches of its obligations under the Lease and MSI's failure to correct material deficiencies in the Premises constitute material and incurable breaches of the express and implied terms of the Lease that render the Lease terminated, void, invalid and/or unenforceable.

53. Upon information and belief MSI disagrees with Commonwealth's contentions thereby creating an actual case or controversy within the jurisdiction of this Court.

**REQUEST FOR RELIEF**

WHEREFORE, Commonwealth requests that the Court enter judgment against the Defendants jointly and severally for:

A. Declaratory relief stating that the Lease is properly terminated, void, invalid and/or unenforceable;

B. Damages, including, but not limited to, compensatory, consequential, incidental damages in the amount exceeding $75,000, the full amount of which will be proven at trial, plus interest thereon at the legal rate until paid in full;

C. Punitive and exemplary damages in an amount sufficient to punish Defendants and deter future conduct of this type;

D. Costs and attorneys' fees; and

E. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 2, 2008
Providence, Rhode Island

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
By its Attorneys,

Stanley J. Kanter (#0440)
Geoffrey W. Millsom (#6483)
James A. Hall (#6167)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
Tel: (401) 274-7200
Fax: (401) 351-4607/751-0604
gmillsom@apslaw.com

*454697_1.doc*