UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COMMONWEALTH LAND TITLE
INSURANCE COMPANY
Plaintiff,

vs. C.A. No. 08-217 ML

M.S.I. HOLDINGS, LLC and
DAVID TAPALIAN
Defendants

**ANSWER OF DEFENDANT, M.S.I. HOLDINGS, LLC.**
**WITH VERIFIED COUNTERCLAIM(S)**

Defendant, M.S.I. HOLDINGS, LLC. (hereinafter, "MSI"), responds to the plaintiff's complaint dated June 2, 2008, as follows:

**FIRST DEFENSE**

**(Separate Paragraphs and Counts of Complaint)**

**Parties, Jurisdiction and Venue**

1. MSI lacks information sufficient to form a belief concerning these allegations and leaves the plaintiff to its proof.

2. Admitted.

3. Admitted to be a "person", denied as being a current member.

4-5. These paragraphs are assertions and/or conclusions of law to which no response seems necessary, thus is taken as avoided or denied pursuant to Rule 8(d) of the Federal Rules of Civil Procedure ("F.R.C.P.").

**Factual Allegations Supposedly Relevant To All Claims**

6. MSI admits the general timeframe and that Commonwealth approached David Tapalian ("David") about the possibility of leasing the second floor space at 100-110 North Main Street, Providence, R.I. 02902 which MSI will also refer to as "the Premises". Answering further, it admits only that David was a member.

7. Admitted.

8. It is denied that David ever acted in a "personal" capacity, made "personal" representations, made "personal" promises and/or undertook personal obligations toward or for plaintiff. Answering further, M.S.I. denies the allegations of this paragraph except that it did promise to renovate the Premises in accordance with plans furnished by plaintiff, that there would be renovations to the entire building that would be done over the term of their lease and (in some instances) might need Historical Society or other approvals, that it planned to offer the entire building to tenants, and that it would complete its obligations in good faith and in accordance with the Lease Agreement ("the Lease") that was eventually executed by the parties.

9. MSI incorporates, by reference, its responses to the preceding paragraph concerning the "representations" alleged and, consequently denies this paragraph.

10. The Lease and its date are admitted.

11. It is admitted that plaintiff moved into the Premises at about the time described, but the remaining allegations of this paragraph are too vague to be intelligible, thus are denied.

12. M.S.I. denies the allegations of this paragraph, except that the exterior of the building and its common areas had not yet undergone renovation or were in the process of renovation, thus were still as seen and observed by plaintiff's representatives when they visited the Premises during negotiations and both before, and after execution of the Lease.

13. M.S.I. admits that plaintiff's floor was fit for occupancy and admits that the building was not fully occupied and that David's law firm had not yet moved into the building. It also admits that the building was undergoing renovations but denies the remaining portions of this paragraph in that the Providence Water Supply Board occupied the fifth (top) floor of the building and a restaurant (Olive's) occupied a portion of the first floor.

14. M.S.I. admits that it did not complete its renovation work of the building prior to plaintiff's occupancy but denies that David was personally responsible for any renovations and denies the remaining allegations of this paragraph.

15. Denied.

16. Admitted, but many of these were de minimus and M.S.I. responded promptly.

17. M.S.I. denies that it acted in any manner inconsistent with its obligations under the Lease and thus denies this paragraph as pleaded.

18. M.S.I. lacks information sufficient to form a belief as to several of the allegations of this lengthy, rambling paragraph, thus neither admits nor denies the same and leaves the plaintiff to its proof. To the extent that it can respond, it admits that work on the exterior of the front of the building took place in about January, 2008 that required lead removal and that the contractor it hired covered all windows on all floors with plywood outside and translucent polyester sheeting inside. Despite this, high pressure forced some dust (most likely including lead particulates) through the windows on all floors. The contractor cleaned all floors and Commonwealth was the only tenant that complained and/or "relocated". Answering further, M.S.I. is unaware of any lead level standards for commercial buildings and denies the remaining portions of this paragraph.

19. M.S.I. is aware that "rodents" (i.e., mice) entered the building during a portion of the time that plaintiff was at the Premises. Other floors experienced the same condition but used mice bait traps and noticed that the mice condition was eliminated within a couple of weeks.

20. M.S.I. is aware of one instance when an HVAC element caused localized water damage to a small portion of the plaintiff's premises. It is also aware of one of plaintiff's employees or guests having clogged a toilet, causing major flooding to a downstairs restaurant tenant. M.S.I. believes that plaintiff's negligence caused a significant disruption in the restaurant's business.

21. M.S.I. lacks information sufficient to form a belief as to the vague allegations of this paragraph, thus neither admits nor denies the same and leaves plaintiff to its proof. To the extent that they imply negligence, breach of Lease or other inappropriate conduct on the part of M.S.I., they are denied.

22. Denied.

**FIRST CLAIM**
(Alleged "Fraudulent Inducement")

23. M.S.I. restates and incorporates, by reference, its responses to such paragraphs.

24-27 Denied.

**SECOND CLAIM**
(Alleged "Breach of Contract")

28. M.S.I. restates and incorporates, by reference, its responses to such paragraphs.

29. Admitted.

30-32. Denied.

**THIRD CLAIM**
(Alleged "Breach of Implied Covenant of Good Faith and Fair Dealing")

33. M.S.I. restates and incorporates, by reference, its responses to such paragraphs.

34. This paragraph sets forth a principle of law to which no response seems necessary, thus is taken as avoided or denied (as applied to Plaintiff and its actions) pursuant to F.R.C.P. 8(d).

35-36. Denied.

**FOURTH CLAIM**
(Alleged "Constructive Eviction")

37. M.S.I. restates and incorporates, by reference, its responses to such paragraphs.

38-40. Denied.

**FIFTH CLAIM**
(Alleged "Intentional Misrepresentation")

41. M.S.I. restates and incorporates, by reference, its responses to such paragraphs.

42-45. Denied.

**SIXTH CLAIM**
(Alleged "Negligent Misrepresentation")

46. M.S.I. restates and incorporates, by reference, its responses to such paragraphs.

47-50. Denied.

**SEVENTH CLAIM**
(Alleged Right to "Declaratory Judgment")

51. M.S.I. restates and incorporates, by reference, its responses to such paragraphs.

52. This paragraph apparently sets forth some or all of plaintiff's contentions, but each and all of them are false, contrived, inaccurate and denied.

53. Admitted; furthermore, M.S.I. incorporates its counterclaim, by reference, in response to this paragraph.

**"REQUEST (sic) FOR RELIEF"**

WHEREFORE, defendant, M.S.I. demands judgment against plaintiff in each and every respect for:

A. Denial of the declaratory relief requested in that plaintiff has already terminated the Lease and now seeks the absolution of this court for its illegal acts and that, to the contrary, the Lease is valid and enforceable as prayed in defendant's counterclaim;

B. Deny damages, interest and costs to plaintiff.

C. Deny plaintiff's demand for "punitive and exemplary damages" as entirely lacking in factual and/or legal support;

D. Deny plaintiff any attorney fees;

E. Deny any and all other relief requested by plaintiff.

F. Grant M.S.I. its costs of suit and reasonable attorney fees for the defense of this action (as well as the relief it seeks in its counterclaim).

G. Grant M.S.I. such further relief as may be fitting, proper and just in the circumstances.

**SECOND DEFENSE**

M.S.I. generally denies all parts, portions, claims, demands and/or allegations of plaintiff's complaint except those designated averments it has expressly admitted in this answer.

**THIRD DEFENSE**

Plaintiff's complaint fails, in whole or in part, to state any cause or causes of action against M.S.I. upon which relief may be granted.

**FOURTH DEFENSE**

Plaintiff's own actions and/or inactions are the sole and/or a contributing cause to its injuries or damages, if any.

**FIFTH DEFENSE**

Plaintiff has failed to mitigate its damages, if any, and has, in fact, caused its own damages and expenses.

**SIXTH DEFENSE**

Some or all of the damages (if any) and/or claims alleged by the plaintiff are too speculative in nature to be recoverable at law or in the alternative must be limited to those damages (if any) that are not merely hypothetical or speculative.

**SEVENTH DEFENSE**

The Lease did not grant plaintiff a right of unilateral termination, and its terms and provisions are incorporated herein, by reference.

**EIGHTH DEFENSE**

To the extent applicable, all alleged negotiations have been integrated into the Lease (see section 23) and evidence of the same is barred as improper parole evidence, thus should be

stricken from the complaint notwithstanding plaintiff's disingenuous attempt to avoid that rule by claiming fraudulent inducement.

**NINTH DEFENSE**

M.S.I. invokes the affirmative defense of waiver as against plaintiff's claims.

**TENTH DEFENSE**

M.S.I. invokes the affirmative defense of illegality as against plaintiff's claims.

**ELEVENTH DEFENSE**

M.S.I. invokes the affirmative defense of laches as against plaintiff's claims.

**TWELFTH DEFENSE**

M.S.I. invokes the affirmative defense of estoppel as against plaintiff's claims.

**THIRTEENTH DEFENSE**

M.S.I. invokes the affirmative defense of unclean hands as against plaintiff's claims.

**FOURTEENTH DEFENSE**

M.S.I. invokes the affirmative defense of its substantial performance of the Lease as against plaintiff's claims.

**FIFTEENTH DEFENSE**

M.S.I. reserves all further pleas, defenses, set-offs, and/or other responsive pleadings that may result from its learning or discovering information currently unknown to it but which appears during discovery, trial or otherwise.

WHEREFORE, M.S.I. demands judgment against plaintiff, with costs, reasonable attorney fees, the relief described above and a trial, by jury.

M.S.I. Holdings, LLC.
By its Attorney,

_/s/ John B. Reilly_______________
John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Tel.: (401) 272-2800
Fax: (401) 272-2811

**VERIFIED COUNTERCLAIM(S)**

**Parties**

1. Defendant and counterclaim plaintiff, M.S.I. Holdings, LLC. (hereinafter, "M.S.I.") is a limited liability company duly organized and existing under the laws of the State of Rhode Island.

2. M.S.I. maintains its principal place of business at 100 North Main Street, 4th Floor, Providence, Rhode Island and is a citizen of the State of Rhode Island.

3. Upon information and belief, plaintiff and counterclaim defendant, Commonwealth Land Title Insurance Company (hereinafter, "Commonwealth") is a business corporation organized and existing under the laws of the State of Nebraska.

4. Upon information and belief, Commonwealth maintains its principal place of business in the Commonwealth of Virginia and is a citizen of either Nebraska or Virginia.

**Jurisdiction and Venue**

5. This court has jurisdiction over these counterclaims due to the complete diversity of citizenship of the parties (M.S.I. has not, as an in-state defendant, removed the matter from a State Court) and requisite amount in controversy (more than $75,000.00, exclusive of interest and costs) pursuant to 28 U.S.C.§ 1332.

6. Jurisdiction also exists in this court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

7. Venue is appropriate in this district in that the events described herein mostly occurred and/or had their effect in the District of Rhode Island. See 28 U.S.C. § 1391 (b)

**Factual Background**

8. M.S.I. has at all relevant times been the owner of the buildings located at 100-110 North Main Street, Providence, R.I. 02903 (hereinafter, "the building").

9. Upon information and belief, the building was constructed and/or first opened in (approximately) the year 1875 and is on the National Register of Historical Buildings.

10. In 2006, David Tapalian ("David") was one of the members of M.S.I. and also practiced law with the firm Tapalian & Tadros, P.C.

11. In 2006, Tapalian & Tadros, P.C. and Commonwealth worked with one another with respect to real estate closings and title policies.

12. In 2006, one of Commonwealth's local representatives, Albert Antonio ("Antonio") advised David that Commonwealth was looking for office space.

13. David mentioned to Antonio that the building was going to be having extensive renovation work and eventually showed Antonio the building and, in particular, the second floor.

14. At the time of Antonio's site visit, it was obvious that extensive work was going to be required to renovate the building and David gave Antonio a general description of M.S.I.'s intentions.

15. David also told Antonio that the Tapalian & Tadros law firm would be moving to the third floor of the building once it was renovated.

16. Antonio expressed an interest in the second floor but explained that he had to contact Commonwealth's corporate offices to determine what steps could be taken to proceed with building out the space and entering into a lease agreement.

17. On or about August 10, 2006, another Commonwealth representative, Ruth Eggleston ("Eggleston"), sent David a summary of Commonwealth's requirements for the renovation of the second floor space.

18. There followed a series of discussions, communications, drawings, revisions, and the exchange of draft lease agreements.

19. On or about September 27, 2006, M.S.I. (as Landlord) and Commonwealth (as Tenant) entered into the Lease agreement referenced in Commonwealth's Complaint ("the Lease").

20. A true and accurate copy of the body of the Lease appears at **Exhibit "A"**. The Lease is incorporated herein, by reference.

21. Copies of the exhibits to the Lease appear at **Exhibit "B"** and consist of a description of the Premises, work agreement for completion of the Premises, and quarterly monitoring report from Lincoln Environmental (designated as Lease Exhibits A through C, respectively). These exhibits to the Lease are incorporated herein, by reference.

22. To prepare the second floor space for Commonwealth, M.S.I. first obtained appropriate permits, did extensive demolition, and constructed the space in accordance with the floor plan and design approved by Commonwealth.

23. Upon information and belief, during construction of the second floor premises Commonwealth representatives visited the building and both observed and were aware of the status of its overall condition.

24. At the conclusion of renovations, a Certificate of Use and Occupancy was issued for the second floor space and in about January 2007, Commonwealth moved into and accepted

possession of the Premises, rent becoming due in February, 2007, in accordance with section 3 of the Lease.

25. After Commonwealth moved to the Premises, it furnished a detailed "punch list."

26. On or about July 19, 2007, a Commonwealth representative named Carter Tatum ("Tatum") wrote to David, thanking him for M.S.I.'s "attentiveness overall the past several weeks addressing the punch list items and maintenance issues at (the Premises)." Further, Mr. Tatum indicated that as of the time of his message, Commonwealth was "satisfied with the work that has been done and the space," but pointed out a few other concerns.

27. Upon information and belief, Mr. Tatum's concerns were addressed in a reasonably prompt manner.

28. In June 2007, the air conditioning unit for the Premises leaked, causing some water damage and subsequently needed maintenance from time to time. M.S.I. continuously worked to correct any and all issues relating to the same.

29. Numbered paragraph or section six (6) of the Lease indicates that Commonwealth was and is "aware that there improvements that will be made to the building interior and exterior, while (Commonwealth) occupies the premises, and (Commonwealth) will be understanding as to this fact as (M.S.I) will attempt to perform such work with the greatest of care so as not to disturb tenant."

30. During the period of approximately December 2007 – February 2008, the renovation plans for the building included work on its exterior front side and M.S.I. obtained appropriate permits to do the same since it was learned that portions of the exterior were covered with lead-based paint.

31. All windows on the second, third and fourth floors of the front side of the building were boarded up on the outside and covered with a translucent vinyl wrap on the inside to attempt to avoid penetration of lead or other foreign particulates into the interior of the Premises and other areas of the building.

32. Notwithstanding such precautions, the high pressure system utilized by the Contractor caused lead and/or other particulates to penetrate the Premises and other areas of the building (including the occupied fourth floor).

33. The Contractor and M.S.I. attempted to monitor and clean these conditions as soon after they occurred as possible.

34. Commonwealth removed its personnel from the Premises, claiming that these conditions were hazardous to the health of its employees.

35. M.S.I. hired Silva Environmental & Associates Inc. ("Silva") of Warwick, Rhode Island, to inspect and sample the second floor (premises) area.

36. In a report dated January 16, 2008, Silva concluded that the Premises was safe for occupancy. Furthermore, it opined that the Premises and its type of use (i.e. no children, sleeping, etc.) were of a type that would not be subject to regulation under the Rhode Island Rules and Regulations for Lead Poisoning Prevention, H.U.D. and/or E.P.A. standards.

37. Additionally, M.S.I. engaged the services of an industrial hygienist who concluded that Commonwealth's claims concerning the existence of "significant health hazards to its employees" were not adequately supported by their own assumptions and testing.

38. Commonwealth moved back into the building following the exchange of reports.

39. Throughout the time of Commonwealth's occupancy of the Premises, M.S.I. has endeavored to move forward with exterior and interior renovations of the building. Due to the historical nature of the building and involvement of its own architects as well as the need for review and approval by the Providence Revolving Fund, numerous delays have ensued. Nevertheless, the work is continuing and when Tapalian & Tadros moved to the building, the second, third and fourth floors were occupied.

40. Upon information and belief, the downward change in the real estate market has required Commonwealth to downsize its business operations and layoff and/or terminate some employees.

41. In April 2008, another Commonwealth representative named Maria DaSilva ("DaSilva") contacted David and arranged for a meeting.

42. Ms. DaSilva visited the building and indicated that she and/or some other Commonwealth representative would be presenting another "punch list."

43. Ms. DaSilva inquired about "buying out" Commonwealth's remaining lease obligation.

44. M.S.I. never received a new punch list.

45. M.S.I. did not receive an offer to "buy out" Commonwealth's remaining obligations under the Lease.

46. During the period of approximately May 28 – 31, 2008, Commonwealth evacuated and abandoned the Premises, without notice. It not only removed its furniture but also the alarm system and returned the keys to the Premises.

47. By letter dated June 2, 2008 (copy at **Exhibit "C"**), Commonwealth (through counsel) contended that the Lease is "void, invalid and unenforceable" due to "fraudulent

inducement and misrepresentations" and other breaches, including (apparently) an alleged breach of paragraph 12(b) of the Lease.

48. Accordingly, Commonwealth has moved, stopped paying rent, and evidenced its plan to never return to the Premises or further perform its obligations under the Lease in any manner.

49. All previous paragraphs (and Exhibits) of this Counterclaim are restated and incorporated, by reference, in each Count that follows.

**COUNT I**
(Breach of Lease Contract)

50. Commonwealth's actions in vacating the Premises and having formally notified M.S.I. that it was unilaterally "formally" terminating the Lease and declaring it "void, invalid and unenforceable," constitutes a unilateral and complete breach of the Lease.

51. M.S.I.'s rental payment for the month of June 2008, is now past due and any notices and/or demands for rent and/or damages by M.S.I. to Commonwealth under the provisions of the Lease would be futile as evidenced by Commonwealth's actions, representations, and initiation of this litigation.

52. Furthermore, Commonwealth's actions and representations are such as to estop it from demanding notification for past due rent and/or any additional rent due under the Lease.

53. M.S.I. will exercise its best efforts to mitigate damages but Commonwealth's breach of its obligations under the Lease have obligated M.S.I. to obtain legal counsel and bring this counterclaim for recovery of any and all loss of rents and any other damages for which Commonwealth is now or will in the future be obligated under the provisions of the Lease.

54. Commonwealth's breach of contract (the Lease) and abandonment of the Premises has caused M.S.I. damages that will be of a continuing nature and may be finally determined only after an extended period of time and mitigation efforts (and expenses incurred in that regard).

55. Accordingly, M.S.I. is entitled to all costs, expenses, damages, lost rents, and legal fees that it has incurred and may incur in the future as a result of Commonwealth's unilateral breach of the Lease.

WHEREFORE, M.S.I. demands judgment against Commonwealth in an amount equal to all compensatory damages and loss of rent and/or additional rent that M.S.I. incurs as a result of Commonwealth's breach of contract (the Lease), plus interest, costs, reasonable attorney fees, and all further relief that the Court deems just and appropriate in the circumstances.

**COUNT II**
(Book Account Damages)

56. Commonwealth is and will be indebted to M.S.I. in the amount of any lost rents and/or lost additional rents or expenses incurred by M.S.I. as a result of Commonwealth's breach of the Lease and M.S.I.'s efforts to mitigate damages thereafter.

57. All such expenses are recoverable by M.S.I. on book account.

WHEREFORE, M.S.I. demands judgment against the Commonwealth on book account for all sums of all loss of rents, lost additional rents, mitigation expenses, costs, interest, and reasonable attorney fees that it incurs as a result of the failure of Commonwealth to meet its obligations under the Lease.

**COUNT III**
(Quantum Meruit)

58. M.S.I. provided valuable services to Commonwealth, including its having incurred expenses for a "build-out" of the Premises to Commonwealth's specifications.

59. The costs of such "build-out" formed a portion of the overall agreed upon rental amount.

60. Additionally, M.S.I. made arrangements for the reservation of parking spaces in the parking lot adjacent to the Premises for which it reached agreement with the operator of such parking lot and has incurred expenses for the same.

WHEREFORE, M.S.I. demands judgment against Commonwealth for all expenses it has incurred by way of *quantum meruit* plus interest, costs, reasonable attorney fees and such other relief as the Court deems appropriate under the circumstances.

**COUNT IV**
(Breach of Implied Covenant of Good Faith and Fair Dealing)

61. As with every contract executed in Rhode Island, the Lease is subject to an implied covenant of good faith and fair dealing on the part of both parties.

62. Commonwealth has by its actions breached its implied covenants of good faith and fair dealing.

63. As a result of Commonwealth's breach of the aforementioned covenants, M.S.I. has been damaged and is entitled to compensation for all its resultant losses, both present and future.

WHEREFORE, M.S.I. demands judgment against Commonwealth for compensatory damages in an amount to be determined at trial.

**COUNT V**
(Abuse of Process)

64. The actions of Commonwealth in filing this action and serving summons upon M.S.I. were undertaken for improper and illegitimate reasons unrelated to the purported relief claimed in its complaint and without reasonable belief in the truth of the allegations contained in its complaint, thus constitute a form of attempted extortion and an abuse of legal process.

65. As a result of Commonwealth's actions, M.S.I. is entitled to compensatory and exemplary or punitive damages.

WHEREFORE, M.S.I. demands judgment against Commonwealth for compensatory and exemplary or punitive damages, plus interest, costs and reasonable attorney fees.

**COUNT VI**
(Declaratory Relief)

66. To the extent necessary, this court has jurisdiction to declare the rights, obligations and relations of the parties pursuant to 28 U.S.C.§2201, *et seq*.

67. Under the circumstances, M.S.I. respectfully requests that this party exercise that jurisdiction and in doing so that it:

A. Construe the Lease and all terms and provisions thereof;

B. Declare that the Lease has not been altered, amended or changed in any way since its execution;

C. Declare that section 23 of the Lease (wherein it is acknowledged that Commonwealth "acknowledges and agrees that it has not relied upon any statement, representation, agreements or warranties except as expressed (in the Lease)" was negotiated at "arm's length" by sophisticated parties and thus precludes parole evidence about the "misrepresentations" and "inducements" described in plaintiff's complaint;

D. Adjudge and declare that there exists no independent, equitable basis upon or for which M.S.I. is or should be obligated to Commonwealth under the Lease or otherwise.

E. Construe the law and matters in question and determine the rights and obligations of the parties; and

F. Grant M.S.I. such further relief as may be fitting, just and appropriate in the circumstances.

**COUNT VII**
(Attorney Fees)

68. In addition to the legal fees provided by the terms of the Lease, M.S.I. is entitled to attorney fees and costs pursuant to R.I.G.L. §9-1-45.

WHEREFORE, M.S.I. demands judgment against Commonwealth for its costs and attorney fees pursuant to the Lease and R.I.G.L. §9-1-45.

M.S.I. Holding, LLC,
By its Attorney,

____/s/ John B. Reilly____________

John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Tel.: (401) 272-2800
Fax: (401) 272-2811

VERIFICATION

The undersigned, being duly sworn upon oath, hereby depose and say that:

1. I am the member of the M.S.I. Holdings, LLC ("M.S.I.") in this action.

2. I hereby verify that the facts and matters contained in the foregoing complaint are, to the best of M.S.I.'s knowledge and belief, true and accurate.

3. With respect to those matters that are asserted to be "upon information and belief", I further, to the best of M.S.I.'s knowledge, believe them to be as stated.

H. Charles Tapalian, Member

Subscribed and sworn before me at Providence, Rhode Island this _10th_ day of June, 2008

Notary Public

**CERTIFICATION**

It is hereby certified that on the 12th day of June, 2008, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record will receive notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Geoffrey W. Millsom, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443
gmillsom@apslaw.com

James A. Hall, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443
jhall@apslaw.com

It is also hereby certified that a true copy of the within will be sent by first-class mail, postage prepaid on this 12th day of June, 2008 to the following counsel of record:

Stanley J. Kanter, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443

/s/ John B. Reilly