# EXHIBIT "A"

# *LEASE*

**THIS LEASE** made this 27th day of September 2006 between **M.S. I. Holdings, LLC** a Rhode Island limited liability company with a mailing address of P.O. Box 6684, Providence, R.I. 02904, (hereinafter "Landlord") and Commonwealth Land Title Insurance Company a Nebraska corporation (hereinafter "Tenant").

**WITNESSETH:**

1. **LEASED PREMISES & PARKING**. In consideration of the rents and covenants herein reserved and contained on the part of the Tenant to be paid, performed and observed, the Landlord does hereby lease to the Tenant the Second (2nd) Floor, of 100-110 North Main Street, Providence, Rhode Island further described on the Exhibit A attached hereto (hereinafter "Leased Premises" or "Premises") containing 7564 net rentable square feet. The building in which the Premises is located is hereinafter referred to as the "Building". The Building consists of 32,821 square feet.

Landlord shall provide 12 spaces to Tenant. Additional spaces shall be provided to Tenant at the cost of $120 per month for each space up to 10 spaces for total parking of 22 cars. Tenant shall pay this expense monthly as additional rent.

The Landlord warrants to Tenant that they have good and marketable title to the Premises, and that they have good and legal right to execute and deliver this lease and to grant and convey to Tenant the leasehold estate herein provided for the term, at the rental, and upon the conditions herein set forth. The Landlord also warrants and agrees to defend the title to the

Premises, and covenants that the Tenant shall peaceably and quietly have, hold, and enjoy the exclusive use of the Leased Premises for the full term.

2. **TERM.**

**(a) TO HAVE AND TO HOLD** for a term of **FIVE** (5) years beginning on Substantial Completion (as defined below) of the Tenant Improvements, which is currently estimated to be the 1st day of February 2007 (the "Commencement Date") and ending sixty (60) months thereafter. "Substantial Completion" shall mean the date that a Certificate of Occupancy or its equivalent is issued by the appropriate local government entity concerning the Tenant Improvements, or, if no Certificate of Occupancy will be issued for the Tenant Improvements, the date on which the Tenant Improvements are substantially completed so that Tenant may use the Premises for their intended purpose, notwithstanding that punchlist items or insubstantial details concerning construction, decoration, or mechanical adjustment remain to be performed; all in accordance with Exhibit B to this Lease. Landlord shall use its best efforts to substantially complete the Tenant Improvements by February 1, 2007. Notwithstanding anything to the contrary in this Lease, if the Premises are not delivered to Tenant by April 15, 2007, Tenant shall have the option to terminate the Lease without obligation, with any pre-paid rent to be promptly returned by Landlord to Tenant.

**(b) Early Occupancy.** Tenant shall be allowed access to the Premises two (2) weeks prior to Substantial Completion (without charge and without affecting the Commencement Date of the Lease) for the limited purpose of installing wiring, telephone service and furniture and other Tenant Improvements.

**(c) Renewal Right.** Tenant shall have one (1), three (3)-year options for renewal by providing written notice to the Landlord not less than **ONE HUNDRED AND TWENTY** (120) days prior to the termination of the first term.

3. **RENT.** Yielding and paying therefore the following rental:

From February 1st , 2007 to January 31, 2012, Annual Base Rent at the rate of **ONE HUNDRED SIXTY SIX THOUSAND AND FOUR HUNDRED AND EIGHT ($166,408.00) DOLLARS**, payable during said term in **TWELVE (12)** equal monthly installments of **THIRTEEN THOUSAND EIGHT HUNDRED and SIXTY SEVEN and 33/100 ($13,867.33) DOLLARS**. Said rental amount being based upon **TWENTY TWO ($22.00) DOLLARS** per square foot for the approximate 7,564 square footage. Said monthly payments are payable in advance on the first day of each calendar month and after the 5th day of said month Tenant shall owe a 5% late fee on the outstanding balance. Tenant shall pay the first month's rent to Landlord upon the execution of this Lease.

Notwithstanding the date specified in the Lease for the commencement of the term, the Lease Term and Tenant's obligation to pay rent under the Lease shall not commence until Landlord shall have substantially completed all work and installations to be performed by Landlord for Tenant's occupancy and Tenant has accepted possession of the Premises. If the term commences on a day other than the first day of a calendar month or ends on a day other than the last day of a calendar month, then monthly rent will be appropriately prorated by Lessor based on the actual number of calendar days in such month. Rent payments will be due on or before the first day of every month.

If renewal option is exercised, the rent will be an Annual Base Rent at the rate of **ONE HUNDRED EIGHTY NINE THOUSAND ONE HUNDRED ($189,100.00) DOLLARS**, payable during said term in **TWELVE (12)** equal monthly installments of **FIFTEEN THOUSAND SEVEN HUNDRED FIFTY EIGHT AND 33/100 ($15,758.33) DOLLARS**. Said rental amount being based upon **TWENTY FIVE ($25.00) DOLLARS** per square foot for the approximate 7564 square footage. Said monthly payments are payable in advance on the first day of each calendar month.

4. **TAXES.**

(a) Real property taxes are the sole responsibility of the Landlord. Personal property and other taxes associated with Tenant's assets and business are the responsibility of the Tenant.

5. **TENANT'S AND LANDLORD'S RESPONSIBILITIES (MAINTENANCE, UTILITES, & SERVICES).**

(a) **Tenant's Responsibility.** The Tenant shall pay to the proper party or authority (or to the Landlord as additional rent if the Landlord so directs) the charge for heat and air conditioning used on the premises based on 7564 square feet or 23% of the Building, and electricity to the Premises, janitorial, alarm system monitoring fees, if monitoring is desired by Tenant (Tenant shall contract independently for this service with the service provider). Tenant will provide, and retain ownership to, its own telephone and computer internet system and will pay all charges for said usage and setup on or for the Premises. All charges for Tenant's use of oil, gas water, sewer and electric at the Premises during the term of this Lease shall be billed to

Tenant as additional rent based on 7564 square feet or 23% of the Building (if Tenant does not pay such amount directly to the provider of the utility). Tenant acknowledges that Olives, the restaurant open at 5p.m every night (or any other restaurant by a different name located in the same space as Olives), has its own meter for the aforementioned services. Responsibility for utilities shall be calculated based upon Tenant's respective occupancy percentage of the Building; excluding Olives (or the restaurant located where Olives is currently located) from the calculation. If payable to the Landlord, such charges shall be paid within twenty (20) days from the submission of any invoice for same by the Landlord to the Tenant.

(b) **Landlord's Responsibility**. Landlord shall be responsible for structural upkeep and replacement of the Building and the Building systems, including all HVAC, plumbing systems, the roof, all exterior windows and doors, all electrical systems and the like. Landlord shall be responsible for all snow removal and all other general grounds care (including, but not limited to, landscaping, maintaining and repairing the sidewalks and parking lots), common area upkeep (including, but not limited to, repair and maintenance of all common area bathrooms, stairwells, elevators, public corridors) and common area janitorial. The Landlord expressly agrees to maintain the roof and exterior sidewalls of the Premises and the Building in a weather tight condition. Landlord shall pay all real estate taxes associated with the Building. Additionally, Landlord shall provide the following: HVAC as required for the comfortable occupation and use of the Premises and hot and cold water for lavatory and toilet purposes.

(c) **Untenantable Premises.** Notwithstanding anything to the contrary herein, if the Premises is rendered untenantable in whole or in part for a period in excess of three (3) business days by such interruption or curtailment or by the making of repairs, replacements, or additions, other than those made with Tenant's consent or caused by the misuse or gross neglect of Tenant

or any Tenant party, there shall be a proportionate abatement of rent during the period of such untenantability.

6. **QUIET ENJOYMENT.** The Tenant, upon paying the Base Rent and any additional rent and other charges herein provided for, and performing all other terms of this Lease, shall quietly have and enjoy the leased property (including the Premises and the common areas) during the term of this Lease without hindrance or molestation by anyone claiming by or through the Landlord, subject, however, to the reservations and conditions of this Lease. However Tenant is aware that there are improvements that will be made to the building interior and exterior, while the Tenant occupies the premises, and Tenant will be understanding as to this fact as Landlord will attempt to perform such work with the greatest of care as to not disturb Tenant.

7. **USE.** The Tenant may use and occupy the leased property only for general office purposes and use as title company office and related professional activities.

8. **IMPROVEMENTS.** See attached Exhibit B

9. **INSURANCE.** The Tenant shall be responsible for insurance on its property and possessions and shall have its own general liability insurance not less than. $500,000 with respect to any one injury and $1,000,000 with respect to any one incident. All of the insurance requirements set forth herein on the part of Tenant to be observed shall be deemed satisfied if the Premises are covered by a blanket insurance policy complying with the limits, requirements and criteria contained in this Lease.

Landlord shall also maintain a general comprehensive public liability insurance policy covering the Premises in amounts not less than $500,000 with respect to any one injury and $1,000,000 with respect to any one incident. Additionally, Landlord shall maintain in effect at all times fire and hazard "all risk" insurance covering one hundred percent (100%) of the full replacement cost valuation of the Building, the Tenant Improvements, the Alterations and shall be subject to commercially reasonable deductibles, in the event of fire, lightning, windstorm, vandalism, malicious mischief and all other risks normally covered by "all risk" policies carried by landlords of comparable buildings in the vicinity of the Building. Landlord shall also obtain and keep in full force (a) a policy of commercial general liability and property damage insurance and (b) workers' compensation insurance, all such insurance being in amounts and with deductibles comparable to the insurance being carried by landlords of other comparable quality office buildings in the vicinity of the Building.

**10. MUTUAL NON-SUBROGATION.** The Tenant hereby releases the Landlord to the extent of its insurance coverage, from any and all liability for any loss or damage caused by fire or any casualty, even if such fire or other casualty shall be brought about by the fault or negligence of the Landlord, its servants or agents, provided, however, this release shall be in force and effect only so long as it shall not affect the right of the Tenant to recover under its said insurance policies.

Likewise, the Landlord hereby releases the Tenant to the extent of its insurance coverage, from any and all liability for any loss or damage caused by fire or any casualties, even if such fire or other casualty shall be brought about by the fault or negligence of the Tenant, its servants

or agents, provided, however, this release shall be in force and effect only so long as it shall not affect the right of the Landlord to recover under said policies.

11. **SIGNS.** The Tenant may place and maintain in and about the leased premises, including the common areas upon exit from the elevator and the door entrance to the unit, neat and appropriate signs as are reasonably required in conjunction with the professional activities of the Tenant. The Building in which the Premises are located is a nationally registered historic landmark; and as such, the exterior and interior is regulated by various city and historic committees and no changes to same shall be made without Landlord's and said committees consent.

12. **DEFAULT AND DEFEASANCE.**

(a) TENANT'S DEFAULT. In case the Tenant shall neglect or fail to pay rent or any other charge herein provided when due and payable, such failure continuing for a period of ten (10) days after written notice of such failure or in case the Tenant shall neglect or fail to perform and observe any of the other obligations in this lease on its part to be performed and observed and shall not cure such default within thirty (30) days after written notice thereof from the Landlord (or such longer period as is reasonably necessary to remedy such failure, provided that Tenant shall continuously and diligently pursue such remedy until such failure is cured); and, notwithstanding any license or waiver of any former breach of covenant in any former instance, the Landlord, its successors or assigns, may lawfully, upon fifteen (15) days additional written prior notice to the Tenant, at any time thereafter, and while such default, neglect or condition continues (provided such grace or cure period provided above has expired), terminate this lease without prejudice to any remedies which might otherwise be used for arrears of rent or for

preceding breach of covenants, or for both; that upon notice as aforesaid this lease shall terminate, and the Tenant agrees with the Landlord that in the case of such termination as aforesaid during the period of said term, it will be responsible to the Landlord for all losses of rent or other payments (as such become due) which the Landlord may incur by reason of such termination of the lease, provided that nothing herein shall absolve the Landlord from its duty to attempt to re-lease or otherwise utilize the Premises in mitigation of its damages.

**(b) LANDLORD'S DEFAULT**. Landlord shall be in default under this Lease if Landlord fails to perform its obligations within thirty (30) days after receipt of notice from Tenant (or upon shorter notice as may be reasonable in the event of an emergency), or having commenced to perform or correct the same, should fail to carry the same to conclusion with diligence. In the event Landlord is in default as provided for herein, Tenant may without waiving any rights which it may have at law or in equity proceed to correct or perform the same, at Landlord's sole cost and expense, in which case Landlord agrees to reimburse Tenant within thirty (30) days after receiving Tenant's invoice setting forth Tenant's costs. If Landlord fails to reimburse Tenant within such thirty (30) day period, Tenant may offset the billed amount against rent and other charges due under the Lease or terminate the Lease without further notice.

**13. FIRE AND RESTORATION OF PREMISES.** It is agreed that in case the Premises or the Buildings containing them, or any part thereof, shall during the said term be destroyed by fire or other casualty so that the Premises shall be thereby rendered unfit for occupancy (i.e. so substantially damaged as to be untenantable in the determination of a reasonable person), then either party may, by written notice to the other party (given within thirty (30) days of such damage) elect to terminate this lease and such termination shall become

effective as of the time of such destruction or damage. If neither party terminates the Lease or if the Premises is only partially damaged, Landlord shall commence the process of restoration of the Premises to substantially the condition which existed immediately prior to the occurrence of the casualty within sixty (60) days of the damage and Landlord shall proceed with due diligence to complete said restoration of the Premises. If Landlord chooses to restore the Premises, Rent shall abate with respect to the untenantable portion of the Premises from the date of such casualty until the date of substantial restoration thereof. Upon complete restoration, full Rent shall commence.

If Landlord fails to complete such restoration within one hundred eighty (180) days of the date of the casualty, this Lease may be terminated as of the date of the casualty upon notice from either party to the other, given not more than ten (10) days following the expiration of said one hundred eighty (180) day period. If such notice is not given, this Lease shall remain in force and effect and Rent shall commence upon delivery of the Premises to Tenant in a tenantable condition (evidenced by notice to Tenant that the Premises are substantially completed).

**14. <u>EMINENT DOMAIN.</u>** If during the term of this lease, the whole or any part of the demised Premises shall be taken by City, State, County or Federal authorities, or subdivisions thereof, or agencies acting pursuant to authority thereof, or by condemnation or by eminent domain or any means, for any purposes whatsoever, then the within lease shall terminate as of the day preceding such condemnation and the Tenant shall have no claim whatsoever against the Landlord and the Tenant shall not claim or be entitled to any award or any part of any awards made for damages for the taking as aforesaid of the whole or any part of the demised Premises, except that any award for Tenant's trade fixtures and moving or relocation expenses and for any bonus value over the unexpired term of this lease recoverable by Tenant from the

condemning authority shall belong to the Tenant. Nothing herein shall preclude Tenant from prosecuting any claim directly against the condemning authority for the value of and the cost of removal of Tenant's trade fixtures and personal property and all costs associated with Tenant's relocation, if not included in Landlord's award.

15. **LANDLORD'S RIGHT TO PERFORM TENANT'S OBLIGATIONS.** If the Tenant shall be in default in expiration of any grace or cure period provided hereunder, the Landlord may, if Tenant has not commenced such cure within ten (10) business days after receipt of notice from Landlord for the need for such cure, cure such default on behalf of the Tenant, in which event the Tenant shall reimburse the Landlord for all reasonable sums paid to effect such cure. In order to collect such reimbursement the Landlord shall have all the remedies available under this lease for a default in the payment of rent.

16. **LANDLORD'S RIGHT OF ACCESS.** The Landlord or its agent shall be permitted to enter the leased property at all reasonable times and upon reasonable advance notice via a telephone call to Tenant's representative, Springer Douglas_(804-267-8732) (except in an emergency) for the purpose of inspecting the leased property and making any necessary repairs to the leased property and performing any work therein that may be reasonably necessary.

17. **ASSIGNMENT, SUBLEASE.** Except to Tenant's affiliate, parent or subsidiary, the Tenant shall not have the right to assign and agrees not to assign this lease nor underlet the whole or any part of the Premises without the prior written consent of the Landlord, which shall not be unreasonably withheld, conditioned or delayed. Tenant shall be allowed to

assign or sublet this Lease to its parent, subsidiary, or affiliate without Landlord's consent. Tenant shall give written notice of any such assignment or subletting to Landlord within thirty (30) days.

18. **SURRENDER.** At the expiration of the lease term the Tenant shall surrender the Premises in as good condition as it was in at the beginning of the term, reasonable use and wear, damage by casualty and that which is Landlord's obligation to repair excepted. Tenant shall be allowed to remove all of Tenant's business equipment or personal property at or prior to the expiration or termination of the Lease. In no event shall Tenant's business equipment or personal property become the property of the Landlord. Tenant shall not be required to remove cables, conduits, security systems, or any other electrical wiring upon termination of the Lease.

19. **TENANT'S PROPERTY.** All furniture and property of any kind, nature or description belonging to the Tenant or any person claiming by, through or under it, which may be in, on or about said demised Premises during the continuance of this Indenture of Lease or any extension or renewal thereof is to be at the sole risk and hazard of the said Tenant, and if the whole or any part thereof shall be destroyed or damaged by fire, water, steam, smoke or otherwise, or by the leakage or bursting of water pipes, or in any other way or manner, no part of said loss or damage is to be charged to or to be borne by the Landlord in any case whatsoever, unless such damage is caused by the gross negligence or willful misconduct of Landlord, its agents, employees, or contractors.

20. **WAIVERS.** The Tenant covenants with the Landlord that the failure of the Landlord to insist in any one or more instances upon the strict and literal performance of any of the covenants, terms or conditions of this lease or to exercise any option of the Landlord herein contained shall not be construed as a waiver or relinquishment for the future of such covenant, term, condition, or option, but the same shall continue and remain in full force and effect. The receipt by the Landlord of rent with knowledge of the breach thereof shall not be deemed to be a waiver of such breach, and no waiver by the Landlord of any covenant, term, condition or provision of this lease or of the breach thereof shall be deemed to have been made by the Landlord unless expressly acknowledged in writing by the Landlord over its signature. One or more waivers of any covenant or condition by Tenant shall not be construed as a waiver of any subsequent breach of the same or other covenant or condition.

21. **SUBORDINATION.** The Tenant hereby subordinates this lease to any mortgage, which the Landlord may from time to time place upon the property of which the leased Premises are a part. Any such mortgage, whenever recorded, shall be superior and prior in lien to this lease. This subordination shall be self-operative and no further instrument of subordination shall be required, provided Tenant's right to quiet possession under this Lease shall not be disturbed so long as Tenant is not in default, or with notice or passage of time or both would not be in default, under the terms, covenants, conditions and provisions of this Lease. The Tenant shall nevertheless execute and deliver from time to time such instruments and certificates consistent herewith affirming and confirming this subordination as the Landlord may reasonably request in writing, provided that Landlord's Lender agrees not to disturb Tenant's right to quiet possession under this Lease so long as Tenant is not in default, or with notice or

passage of time or both would not be in default, under the terms, covenants, conditions and provisions of this Lease. Notwithstanding the foregoing provisions hereof, if the mortgagee or any other party shall take title to the leased Premises through foreclosure or deed in lieu of foreclosure, Tenant shall be allowed to continue in possession of the leased Premises as provided for herein so long as Tenant shall not be in default of the terms hereof, in expiration of any grace or cure period provided under this Lease.

**22.** **NOTICES.** All notices that may be given hereunder shall be in writing and shall be given by mailing the same by hand delivery for which a signed receipt is obtained, by a nationally recognized overnight courier, or by certified, over-night or registered mail, return receipt requested, postage prepaid. Notices to Tenant, shall be delivered c/o LandAmerica Financial Group, Inc., 5600 Cox Road, Glen Allen, Virginia 23060, Attn: Corporate Real Estate, or to such other person or at such other address as Tenant may thereafter designate by notice to Landlord; and if given to Landlord, the same shall be mailed **M.S. I. Holdings, LLC** a Rhode Island limited liability company with a mailing address of P.O. Box 6684, or to such other person or at such other address as Landlord may hereafter designate by notice to Tenant.

**23.** **AMENDMENT OR MODIFICATION.** The Tenant acknowledges and agrees that it has not relied upon any statement, representation, agreements or warranties except such as are expressed herein. No amendment or modification of this Indenture of Lease shall be valid or binding unless expressed in writing and executed by the parties hereto in the same manner as the execution of this Indenture of Lease.

24. **CONDOMINIUM DECLARATIONS.** N.A.

25. **SUCCESSORS AND ASSIGNS.** All terms, conditions and covenants to be observed and performed by the parties hereto shall be applicable to and binding upon and inure to the benefit of their respective successors and assigns.

26. **N.A.**

27. **MISCELLANEOUS.** This Indenture of Lease shall be governed by, construed and enforced in accordance with the laws of the State of Rhode Island. The captions of this Indenture of Lease are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of this Indenture of Lease, nor in any way affect this Indenture of Lease.

28. **ENVIRONMENTAL MATTERS.** Landlord represents and warrants to Tenant that to the best of Landlord's knowledge, (a) no hazardous substances (except for normal office, janitorial and maintenance supplies) are or have been located, stored, or disposed on or released or discharged from the Premises, Building, or Real Estate; and (b) the Premises, Buildings, or Real Estate and their use and operation currently comply with all federal, state, and local requirements relating to the protection of health and the Environment, and all necessary permits have been obtained under Environmental Laws; (c) there is no past or ongoing leakage or spillage of Hazardous Substances from gasoline tanks used or owned by other tenants, which are located in the lower levels of the Building or any migration of Hazardous Substances onto neighboring property. Except for quarterly monitoring that the Landlord performs with respect to subsurface No.2 Fuel Oil that is collected in passive bailers per R.I. D.E.M. order dated

November 1997. Notwithstanding anything in this Lease to the contrary, the liability of Tenant, and any indemnities provided by the Tenant, shall not extend to Hazardous Materials or Substances that were not placed on the Premises, in the Building, or on the land upon which the Building is situated by the Tenant, or by any of Tenant's agents, contractors and employees. In addition, Landlord shall not include in Operating Expenses, or pass on to Tenant directly or indirectly, the cost incurred by Landlord in monitoring, reporting, testing, abating and/or removing Hazardous Materials or Substances that were contained in the Premises, in the Building and/or on the land upon which the Building is situated (including the quarterly monitoring of the subsurface No. 2 Fuel Oil discussed above) as of the Commencement Date of the Lease.

**29. AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA").** Landlord represents and warrants that the Premises, Building and Common Areas of the Property are in compliance with all applicable provisions of Title III of the ADA. Tenant shall cause any (subsequent alterations) buildout or improvements within the Premises to comply with the ADA, however, Landlord shall be responsible for ADA compliance within the already existing leased Premises and Building. Should Tenant employ an individual who requires accommodations under the ADA, then Tenant shall provide such accommodation within the leased Premises, however, Landlord shall be responsible for providing such accommodation within the Common Areas of the property (Project).

**30. ATTORNEYS' FEES.** Notwithstanding anything to the contrary in the Lease, in the event of any litigation by the parties concerning this Lease and enforcement of obligations hereunder, the prevailing party shall be entitled to recover from the opposing party reasonable attorney's fees and other expenses of litigation.

**31. HOLDOVER.** If Tenant holds over and remains in possession of said Premises after the term of this Lease or any renewal thereof, Tenant will from that date forward, unless the parties by written agreement stipulate to the contrary, pay base rent at a rate equal to 125%. And shall be deemed a month to month tenant subject to eviction and termination of said month to month tenancy.

**32. REASONABLENESS AND GOOD FAITH.** Regardless of any reference in the Lease to sole and absolute discretion or words to that effect, but except for matters which (1) could have an adverse effect on the structural integrity of the Building Structure, (2) could have an adverse effect on the Building Systems, or (3) could have an effect on the exterior appearance of the building, whereupon in each such case Landlord's duty is to act in good faith and in compliance with the Lease, any time the consent of Landlord or Tenant is required, such consent shall not be unreasonably withheld, conditioned or delayed. Whenever the Lease grants Landlord or Tenant the right to take action, exercise discretion, establish rules and regulations or make allocations or other determinations (other than decisions to exercise expansion, contraction, cancellation, termination or renewal options), Landlord and Tenant shall act reasonably and in good faith and take no action which might result in the frustration of the reasonable expectations of a sophisticated Tenant or Landlord concerning the benefits to be enjoyed under the Lease.

**33. ALTERATIONS.** Tenant ( at its own cost) shall be allowed to make interior, non-structural alterations to the Premises that cost less than $10,000 without Landlord's consent. If consent is required, Landlord shall, at the time of granting consent to such Alteration(s), provide to Tenant in writing its determination of whether removal of any fixture, improvement or alteration is required. Landlord shall approve or disapprove such request within ten (10)

business days of Landlord's receipt of Tenant's request. Landlord shall, at the time of granting consent to such Alteration(s), provide to Tenant in writing its determination of whether removal of any fixture, improvement or alteration is required. If notification is not received in this timeframe, Landlord's consent shall be irrevocably deemed to be granted and removal shall not be required.

**IN WITNESS WHEREOF**, all of the Members of the Landlord and the Tenant have caused this instrument to be executed in duplicate as of the day, month and year first above written.

**LANDLORD: M.S..I. Holdings, LLC**

By: ______________________
David C. Tapalian, Member

EIN: 04-3677940

**TENANT: Commonwealth Land Title Insurance Company**, a Nebraska corp.

By: ______________________
Dino S. Bazianos, VP, Corp. Real Estate

**COMMONWEALTH OF VIRGINIA**______________

**COUNTY** of Henrico

In Glen Allen, VA, on this 25th day of September, 2006, before me personally Dino S. Barcianos of **Commonwealth Land Title Insurance Company,** a Nebraska corporation to me known and known by me to be the party executing the foregoing document, and he acknowledged said instrument by him executed to be his free act and deed and the free act and deed of the aforementioned Nebraska corporation

Robin Rinderle
Notary Public

**STATE OF RHODE ISLAND**
**PROVIDENCE, SC.**

In Providence on this 28th day of September 2006, before me personally appeared David C. Tapalian, Authorized member of **M.S.I. Holdings, LLC** to me known and known by me to be the party executing the foregoing document, and he acknowledged said instrument by him executed to be his free act and deed as well as the free act and deed of the aforementioned Rhode Island limited liability company.

________________
Notary Public