UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COMMONWEALTH LAND TITLE
INSURANCE COMPANY
Plaintiff

vs. C.A. No. 08-217 ML

M.S.I. HOLDINGS, LLC and
DAVID TAPALIAN
Defendants

**MEMORANDUM OF DEFENDANT, DAVID TAPALIAN, SUPPORTING HIS MOTION TO DISMISS**

Defendant, David Tapalian, ("Tapalian") has moved that the plaintiff's Complaint against him be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.C.P.") He offers this memorandum in support of this request.

**FACTS PERTAINING TO TAPALIAN DESCRIBED IN COMPLAINT**

Plaintiff, Commonwealth Land Title Insurance Company ("Commonwealth") filed its Complaint in this action on June 2, 2008, ("the Complaint"). The named defendants are M.S.I Holdings, LLC ("MSI") and Tapalian.[1]

Viewing the Complaint in the light most favorable to Commonwealth, the material allegations against Tapalian are as follows (numerical references are to the numbered paragraphs of the Complaint at or in which such allegations are found):

3. Tapalian is a natural person "who is a member of MSI and not a citizen of either Nebraska or Virginia." (Tapalian concedes that at the time the Lease was executed, he was a member of MSI and was not a citizen of Nebraska nor Virginia).[2]

[1] MSI has filed an Answer to the Complaint and counterclaimed against Commonwealth. MSI did not answer for Tapalian but its responses, denial and counterclaims are, nevertheless, available for the Court to review and take such judicial notice as may be necessary

6. This paragraph claims that in about February 2006, Commonwealth approached MSI through MSI's "principal member" (described as being Tapalian) about the possibility of leasing the second floor of 100-110 North Main Street, Providence, Rhode Island. It appears to be accurate that discussions began during the approximate time period mentioned, and that Tapalian was a member of MSI. The use of the modifier "principal" is vague and of no consequence to this motion. The premises of the 100-110 North Main Street structure ("the building") is accurately described as comprising the second floor and will also hereinafter be referred to as "the Premises."

7-8. These paragraphs allege that over the next several months (in 2006) Commonwealth had extensive discussions and negotiations in which Tapalian "personally and on behalf of MSI" allegedly made "representations and promises" concerning the Premises and Tapalian's plans for the Premises. As noted in the Lease, the plans for the second floor "Premises" were designed by Commonwealth. Paragraph eight includes other alleged "representations" which are addressed, *seriatim,* as follows:

(a) "MSI and/or Tapalian" would renovate the Premises and make it "Class A" office space. MSI did renovate the second floor for Commonwealth in accordance with its specifications. The exhibits to the Lease set forth those requirements, and it is clear that the Lease is between Commonwealth and MSI, not Tapalian. Furthermore, section 23 of the Lease indicates that Commonwealth acknowledged and agreed that it "has not relied upon any statement, representation, agreements or warranties except such as are expressed" (in the Lease) and that no "amendment or modification" of (the Lease) will be "valid or binding unless expressed in writing and executed by the parties…" The Lease does not make any mention of

[2] Although not directly relevant, Tapalian is no longer a member of MSI.

"Class A" space, nor does it define or attempt to define what Commonwealth means when it uses this term of art.

(b) This portion of paragraph eight indicates that any renovations to the exterior or other parts of the building that MSI intended to perform would be finished prior to Commonwealth's occupancy. Section six of the Lease provides that Commonwealth "is aware that there are improvements that will be made to the building's interior and exterior, while the tenant occupies the Premises, and that tenant will be understanding as to this fact as landlord will attempt to perform such work with the greatest of care so as not to disturb tenant." (emphasis added) The term during which Commonwealth (by the Lease) intended to occupy the building was set forth in section two of the Lease and was intended to be a sixty (60) month period beginning February 1, 2007. Pursuant to these paragraphs in the Lease, Commonwealth's allegations are preposterous.

(c) This portion of paragraph eight claims that MSI and/or Tapalian were "willing to expend sufficient capital to make the necessary renovations in order to convert the Premises into Class A office space." Again, the Lease does not speak of the elusive term "Class A" (whatever that means), and the second floor Premises was completed according to the specifications of Commonwealth. Furthermore, the Complaint does not clarify what is meant by "sufficient capital" nor does it purport to allege that MSI lacked the ability to complete renovations when and if such discussion occurred.

(d) In this portion of paragraph eight, it is alleged that MSI and/or Tapalian "had access to sufficient historic tax credits to ensure that the appropriate renovations would be made in order to convert the Premises into Class A office space." Once again, the Lease and Complaint demonstrate that the second floor was finished pursuant to Commonwealth's specifications, and the term "Class A office space" appears nowhere in the Lease. Furthermore, the Complaint does not allege that tax credits were not actually available.

(e) This portion of paragraph eight indicates that Tapalian told Commonwealth that he was "moving his own law office into the same building and would take residence in the building before Commonwealth." This portion of the Complaint establishes that Tapalian was not only a member of MSI at the time of the negotiations, but was also a practicing attorney. Furthermore, no portion of the Complaint alleges that if such representation was made, Tapalian did not have such intent at the time.

(f) This portion of the Complaint indicates that the building "would be fully occupied with tenants on every floor." No time table for that eventuality is pleaded, nor does Commonwealth contend that filling the building with tenants was the present intent of MSI at the time in question.

(g) This portion of paragraph eight alleges that MSI and/or Tapalian would "ensure Commonwealth's needs and concerns as a tenant were timely and appropriately addressed." Once again, the Lease agreement was between Commonwealth and MSI. Section five of the Lease sets forth the responsibilities of the tenant and landlord (MSI) concerning maintenance and upkeep. Furthermore, the Lease was executed in September 2006 and Commonwealth first moved into the Premises in February 2007. The Lease also provides for tenant's rights in responding to such "needs and concerns."

9. This paragraph alleges that the "representations" allegedly made in paragraph eight were allegedly false when made. It offers no explanation as to why such terms were not particularized in the Lease. Indeed, although plaintiff makes reference to the Lease, it did not attach a copy to its Complaint.[3]

13. In this paragraph, it is asserted that at the time Commonwealth moved into (accepted) the Premises, the building was not fully occupied by other tenants, and Tapalian had not as yet moved his law office into the building.

14. In material part, this alleges that MSI "and/or Tapalian" did not complete their intended renovations prior to Commonwealth's occupancy. This is rendered ludicrous by the Lease agreement (as also noted above).

24. In this paragraph, it is alleged that during the discussions and negotiations leading up to the execution, MSI and/or Tapalian "knowingly and intentionally made false representations and/or omissions of one or more facts material to the Lease and Commonwealth's decision to enter into the lease." Emphasis added. This is vague (as in other portions of the Complaint) and argues in the alternative that either MSI or Tapalian did things that were so important that they never became part of the Lease agreement.

25. Once again, it is argued in the alternative that MSI and/or Tapalian "intended that Commonwealth would rely on the false representations." Once again, the Lease itself belies these allegations. Moreover, even when viewed in the light most favorable to Commonwealth, most of the "significant problems" occurred after the date of occupancy (see paragraphs 12-22 of the Complaint). These subsequent events occurred at a time when there was a Lease agreement

---

[3] As noted above, MSI's Answer and Counterclaims included a copy of the Lease, thus forms part of the "pleadings" in the case to which the Court may refer.

between Commonwealth and MSI. On their face, they cannot implicate Tapalian individually in any way.

26. In this paragraph, Commonwealth contends that it "reasonably relied" upon the "false representations" in agreeing to the Lease. The Lease and fact that most of the allegations of the Complaint relate to times subsequent to the Lease belie this allegation, especially as it pertains to Tapalian. Indeed, Tapalian is not an obligor of anything under the Lease agreement.

42-44. These paragraphs repeat the allegations of paragraphs 25-26 for the purpose of establishing a separate count. Tapalian's comments concerning such allegations will not be repeated.

47-49. These paragraphs repeat the allegations of paragraphs 25-26 for the purpose of establishing a separate count. Tapalian's comments concerning such allegations will not be repeated.

**RULE 12(b)(6) STANDARD**

Pursuant to Rule 12(b)(6) a Complaint must be dismissed when a plaintiff's allegations fail to state a claim for which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court construes the Complaint in the light most favorable to the non-moving party. Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Paradis v. Aetna Cas. & Sur. Co., 796 F.Supp. 59, 61 (D.R.I. 1992). However, "[t]he complaint must at least set forth minimal facts as to who did what to whom, when, where, and why." Ruiz-Rosa v. Rullan, 485 F.3d 150, 154 (1st Cir. 2007 (internal citations omitted); Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 1965, 167 L.Ed2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.")

In deciding a motion to dismiss under Rule 12(b)(6), the Court will accept all well-pleaded allegation in the complaint as true. Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 16 (1st Cir. 1998). "Bald assertions" and "unsupportable conclusions" will not be credited by the Court. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). The Court may also consider documents central to plaintiffs contentions as part of the pleadings on a motion to dismiss without converting it into a motion for summary judgment. Beddall, 137 F. 3d at 17.

## ARGUMENT

TAPALIAN IS NOT A PROPER PARTY PURSUANT TO RHODE ISLAND LAW.

Tapalian cannot be personally responsible as a member of a limited liability company. Pursuant to § 7-16-70 (entitled, "Parties to Actions") of the General Laws of Rhode Island, 1956, as amended ("G.L.R.I"), a "member of a limited liability company is not a proper party to proceedings by or against a limited liability company (with exceptions that are not relevant to this action"). This statute is the applicable law to be applied in this diversity action. It is mandatory in nature.

Under Rhode Island law no individual liability may be imposed upon Tapalian with regard to Commonwealth's claims pertaining to the lease of the premises, because, simply put, he was not a party to the lease. Instead, he was a member of MSI and it was MSI that was intended as and was, in fact, Commonwealth's landlord. MSI operates as a limited liability company which, like a corporation, shields its members from personal liability for the actions of the business entity. And the Rhode Island Limited Liability Company Act controls the question of individual liability through § 7-16-70, *supra.*

Rhode Island's statutory scheme is worded more broadly and seemingly has more complete application than limited liability member responsibility provisions in other jurisdictions. Unlike other states, Rhode Island allows for proceedings against individual LLC members of in only two proscribed circumstances, each inapplicable to the instant case. To wit: this not an action brought under R.I.G.L. § 7-16-56 and it is not an action where the object is to enforce a member's right against, or liability to, MSI (the LLC). Therefore, under the plain terms of the statute, Tapalian, as a member of the LLC, is not a proper party to proceeding brought against it.

Statutory schemes in other States have likewise provided that members or managers of limited liability companies are not personally liable and should that they should not be parties to actions, but qualify this (unlike Rhode Island) through the common use of the modifier, "solely by reason of being a member or acting as a manager or being a member" of the company. Cf. Chapter 156, § 22 of the General Laws of Massachusetts:

> No member or manger of a limited liability company shall be personally liable, directly or indirectly, including, without limitation, by way of indemnification, contribution, assessment or otherwise, for any such debt, obligation or liability of the limited liability company *solely* by reason of being a member or acting as a manager of the limited liability company.
>
> M.G.L.A. 156C § 22 (emphasis added).

See also Wisconsin Stat. Ann. § 183.0305 and Virginia Code Ann. § 13.1-1019. These statutes similarly provide that a member or manager of an LLC will not be held liable for conduct or actions *solely* by reason of being a member of an LLC.

Delaware's favorable corporate laws have long made it a popular place for incorporation and registering in other business forms. The Delaware Limited Liability Statute also states that the liabilities debts and obligations of the LLC shall be "solely the debts, obligations and liabilities of the limited liability company, and no member or manger of a limited liability company shall be obligated personally for any such debt, obligation, or liability of the [LLC] *solely* by reason of being a member or acting as a manager of the [LLC]. Delaware Code Ann. § 18-303. Applying the Delaware statute, a District Court recently found that the sole member of a LLC was not liable for the ordinary contractual debt of a division of the LLC absent evidence that the member became personally obligated for the debt. ColtTech LLC v. JLL Partners, Inc., 538 F.Supp.2d 1355, 1358 (D. Kan. 2008).

Although case law in Rhode Island is sparse concerning the scope of the LLC state liability shield, it is evident that the language of the Rhode Island statute is significantly more mandatory and broadly protective in scope than those State laws which shield liability for actions *solely* by reason of membership in an LLC.

Applying tried and true principles of statutory interpretation, Tapalian, because he was acting as a member of MSI Holdings, LLC, is not a proper party to this proceeding. Fleet National Bank v. Hunt, 944 A.2d 846, 852 (R.I. 2008)("When the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."). Under Rhode Island law, Tapalian is not proper party and the Complaint must be dismissed.

II. ALTERNATIVELY, THE LEASE PROVIDES THAT ALL PRIOR REPRESENTATIONS ARE MERGED INTO IT'S TERMS AND PROVISIONS.

Section 23 of the Lease clearly and unequivocally indicates that Commonwealth "acknowledges and agrees that it has not relied upon any statement, representation, agreements or warranties except as expressed (in the Lease)". According to its complaint, the Lease followed lengthy negotiations and there is no indication that it was not understood nor that it was negotiated at anything other than "arm's length" by sophisticated parties. This precludes parole evidence about the purported "misrepresentations" and "inducements" described and attributed to Tapalian in plaintiff's complaint;

For all the foregoing reasons, Tapalian respectfully urges that the Complaint be dismissed.

David Tapalian,
By his attorney,

/s/ John B. Reilly

John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Tel.: (401) 272-2800
Fax: (401) 272-2811

**CERTIFICATION**

It is hereby certified that on the 18th day of June, 2008, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record will receive notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Geoffrey W. Millsom, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443
gmillsom@apslaw.com

James A. Hall, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443
jhall@apslaw.com

It is also hereby certified that a true copy of the within will be sent by first-class mail, postage prepaid on this 18th day of June, 2008 to the following counsel of record:

Stanley J. Kanter, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443

____/s/ John B. Reilly________