**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>M.S.I. HOLDINGS, LLC and DAVID TAPALIAN,<br><br>Defendant. | Case No.: 08-217 ML |

**OBJECTION OF COMMONWEALTH LAND TITLE INSURANCE COMPANY IN SUPPORT OF TO DAVID TAPALIAN'S MOTION TO DISMISS**

Commonwealth Land Title Insurance Company hereby objects to the Motion to Dismiss of David Tapalian. The arguments upon which this objection is based are set forth on the accompanying memorandum of law.

Dated: Providence, Rhode Island
July 7, 2008

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
By its Attorneys,

/s/ Geoffrey W. Millsom

Geoffrey W. Millsom (#6483)
James A. Hall (#6167)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
Tel: (401) 274-7200
Fax: (401) 351-4607/751-0604
gmillsom@apslaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>M.S.I. HOLDINGS, LLC and DAVID TAPALIAN,<br><br>Defendant. | Case No.: 08-217 ML |

**MEMORANDUM OF COMMONWEALTH LAND TITLE INSURANCE COMPANY <u>IN SUPPORT OF OBJECTION TO DAVID TAPALIAN'S MOTION TO DISMISS</u>**

Commonwealth Land Title Insurance Company ("Commonwealth") submits this memorandum in support of its objection to the Motion to Dismiss of David Tapalian ("Tapalian").

## <u>INTRODUCTION</u>

This case arises out of a lease between Commonwealth and MSI Holdings, Inc. ("MSI"), a limited liability company of which Tapalian (a lawyer, admitted to practice in Rhode Island) is alleged to have been a member and admittedly acted on behalf of in the course of the parties' negotiations. Commonwealth has alleged that Tapalian made false and misleading statements, upon which Commonwealth relied in deciding to enter into a lease. Accordingly, Commonwealth asserts several fraud and misrepresentation claims against Tapalian individually along with several tort and contract-based claims against his company, MSI.

Tapalian now moves to dismiss the claims against him individually on two grounds neither of which is particularly comprehensible, and both of which appear to be so contrary to

well established law and logic as to strain credibility. First, Tapalian suggests that he cannot be held liable for fraud and misrepresentations, because he was acting on behalf of his company at the time of his alleged tortious conduct. This argument relies entirely upon an erroneous interpretation of the Rhode Island Limited Liability Company Act and a complete misunderstanding of the doctrine of *respondeat superior*. It cannot seriously be disputed that individuals may be held accountable for their own misrepresentations regardless of their employment or agency status at the time of the misrepresentations.

Tapalian's second argument is similarly fatally flawed. He argues that dismissal is warranted under a lease provision in which Commonwealth disclaims reliance on any representations that preceded the execution of the lease. The lease provision in question, however, contains only general and non-specific language. Under longstanding Rhode Island law, such language does preclude an action for fraud or misrepresentations. There is no provision in the lease in which Commonwealth disclaimed reliance on any of the specific subjects or matters that Tapalian's misrepresentations are alleged to have concerned.

## **BACKGROUND**

In its Complaint, Commonwealth alleges that it first approached David Tapalian in February of 2006 about the possibility of leasing the Second Floor of 100-110 North Main Street in Providence, Rhode Island (the "Premises"). Complaint, ¶ 6. Commonwealth alleges that the parties had extensive negotiations regarding the Premises over the next few months, which ultimately culminated in the execution of a lease for the Premises between Commonwealth and Tapalian's company, M.S.I. Holdings, LLC ("MSI"). Complaint, ¶ 7-8, 10.

During the course of these discussions and negotiations, Commonwealth alleges that David Tapalian made numerous representations, warranties and promises regarding the Premises. Complaint, ¶ 8. Specifically, Taplian is alleged to have told Commonwealth:

a. MSI and/or Tapalian would renovate the Premises and make it "Class A" office space;

b. any renovations to the exterior of the building or other portions of the building that MSI intended to perform would be finished prior to Commonwealth's occupancy;

c. MSI and/or Tapalian were willing to expend sufficient capital to make the necessary renovations in order to convert the Premises into Class A office space;

d. MSI and/or Tapalian had access to sufficient historic tax credits to ensure that the appropriate renovations would be made in order to convert the Premises into Class A office space;

e. Tapalian was moving his own law office into the same building and would take residence in the building before Commonwealth;

f. that the building would be fully occupied with tenants on every floor; and

g. that MSI and/or Tapalian would ensure Commonwealth's needs and concerns as a tenant were timely and appropriately addressed.

Complaint, ¶ 8. Commonwealth further alleges that each of these representations was false, intended to induce Commonwealth to act in reliance thereon and did, in fact induce such reliance. Complaint, ¶¶ 9, 25-26, 43-44, 48-49.

After the falsity of the representations became known, and it became apparent both that Commonwealth could not use the leased premises for the purpose of operating a title insurance business and that Taplain and MSI were either unable or unwilling to fix the myriad problems with the Premises, Commonwealth was forced to move out on May 31, 2008. Complaint, ¶¶ 14-

22. Thereafter, Commonwealth filed suit against Tapalian and his company. With respect to Tapalian, the claim asserted are for fraudulent inducement, intentional misrepresentation and negligent misrepresentation.

## ARGUMENT

### I. TAPALIAN MISUNDERSTANDS THE LIMITED LIABILITY COMPANY ACT

In his motion to dismiss, Tapalian erroneously contends that Rhode Island's Limited Liability Company Act mandates his dismissal because it prohibits the naming of an LLC member in an action by or against the LLC. Mem. Sup. Mot. Dismiss at 7. As an initial matter, the section of the Act that Tapalian relies upon (R.I. Gen. Laws § 7-16-70) addresses nothing more than the formalities of naming and/or replacing parties to litigation – it does not address the issue of liability of a member. Presumably, Tapalian was attempting to invoke R.I. Gen. Laws § 7-16-23, which is appropriately entitled *Liability of Members and Managers* and directly addresses the issue of a limited liability company members' liability in the context of claims made against the LLC.

Section 7-16-23 states that "[a] member or manager of a limited liability company is not liable for the obligations of the limited liability company solely by reason of being a member or manager." (emphasis added). As such, it is wholly inapplicable to the facts at hand. Commonwealth is not seeking to hold Tapalian liable as a result of his ownership of MSI or because of any acts, omissions, or obligations of MSI. Commonwealth is seeking to hold him liable for his own misrepresentations and fraud.

As many courts have recognized, limited liability company statutes do not immunize members of a limited liability company from liability for their own tortious acts. *See, e.g., State of Countryman v. Farmers Cooperative Assoc.*, 679 N.W.2d 598, 604 (Iowa 2004)

("members or managers are not liable based only on their status as members or managers. Instead, liability is derived from individual activities. Yet, a manager who takes part in the commission of a tort is liable even when the manager acts on behalf of a corporation. The [Iowa limited liability corporation statute] does not insulate a manager from liability for participation in tortious conduct merely because the conduct occurs within the scope and role as a manager."); *Rothstein v. Equity Ventures, LLC*, 299 A.D.2d 472, 474 (N.Y. App. Div. 2002) ("members of limited liability, such as corporate officers, may be held personally liable if they participate in the commission of a tort in furtherance of company business."); *Ledy v. Wilson*, 38 A.D.3d 214, 215 (N.Y. App. Div. 2007) ( "individual Plaintiffs can be held personally liable [on Defendant's counterclaim] for the LLCs' breach of contract if the officers took the challenged actions on the LLCs' behalf and the breach involved bad-faith misrepresentations."). In *Malone v. D and R, LLC*, No. CV040834225S, 2004 WL 2943111, *3 (Conn. Super. Nov. 10, 2004) the court acknowledged that a cause of action for fraud and misrepresentation can lie against an individual manager of an LLC, even in light of a statute – similar to Rhode Island's – that protects members from being named or incurring liability solely based upon membership. The court stated:

> It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable. Similarly, it is also true that an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or an officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby.

*Id*. at *4 (Internal citations omitted.). *See also, Pepsi-Cola Bottling Co. v. Handy,* No. 1973-S, 2000 WL 364199 *4 (Del. Ch. March 15, 2000) (interpreting the similar "solely by reason of being a member" statutory language to allow a plaintiff to advance claims of misrepresentation against a member of an LLC who made the allegedly fraudulent material statements); *Bogle v.*

*Summit Inv. Co.*, 104 P.3d 520, 528 (N.M. Ct. App.2005) ("an agent of a [limited liability] corporation [who is also a manager of that limited liability corporation] may be held liable for the consequences of his own acts or omissions, including tortious acts"); *Moellers North America, Inc. v. MSK Covertech, Inc.*, 912 F. Supp. 269, 271 (W.D. Mich. 1995) (denying motion for judgment on the pleadings with respect to claims of tortious interference and libel brought against individual member of a limited liability company).

By misconstruing the Act to immunize members from liability for their own torts, Tapalian invites the court to turn the doctrine of *respondeat superior* on its head and convert it from a principle of vicarious liability to a doctrine that immunizes tortfeasors from individual liability for their own tortious actions merely because they may have been employed at the time of the tortious act and acting within the scope of their employment. Section 343 of the Restatement of Agency explains that "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account for the principal."[1] Restatement (Second) of Agency: Fraud And Duress § 343 (1958)**.** *See also, Metromedia Steakhouses Co. v. Resco Mgmt., Inc.*, 168 B.R. 483, 487 (D.N.H. 1994)("[a]n individual, including a director, officer, or agent of a corporation, may be liable for injuries suffered by third parties because of his torts, regardless of whether he acted on his own account or on behalf of the corporation."); *In Re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir. 1985) ( "[i]t is well established that a corporate officer or agent is personally liable for torts committed by him *even though he was acting for the benefit of the corporation*.").

---

[1] Indeed, the Restatement specifically instructs that "[a]n agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person, although the fraud or duress occurs in a transaction on behalf of the principal." Restatement (Second) of Agency § 348 (1958).

## II. TAPALIAN'S LIABILITY FOR HIS MISREPRESENTATION IS NOT IMPACTED BY THE LANGUAGE OF THE LEASE

Tapalian also argues – without the benefit of any legal authority – that he cannot be liable for his fraudulent misrepresentation because the lease is a fully integrated writing into which all prior representations are merged. According to Tapalian, "parole [sic] evidence" of contractual negotiations is precluded. Mem. Sup. Mot. Dismiss at 10.

While the legal principles that underlie this argument are not easily discernable, Taplain appears to be confusing tort and contract principles. Clearly, parol evidence may not explain, modify or contradict the terms of an unambiguous written contract, but Commonwealth has not sued Tapalian for breach of contract – it has sued him for fraud and misrepresentation. There is no rule of evidence, theory or other legal doctrine – under contract law or otherwise – that precludes the introduction of oral representations in an action for fraud and misrepresentation merely because those representations preceded the formation of a contract. Indeed, the tort of fraudulent inducement (of contract) exists because fraudulent representations that precede the formation of a contract and induce one of the contracting parties to enter into the contract are actionable.

To the extent that Tapalian intended to argue that Commonwealth's claims must be dismissed because Commonwealth's reliance on Tapalian's fraudulent representations was unreasonable in light of the disclaimer of reliance clause in the lease, his argument is flatly contrary to well established Rhode Island law, which holds that non-specific and general contractual disclaimers of liability do not preclude actions for fraud. *See Bloomberg v. Pugh Bros., Co,.* 45 R.I. 360, 364, 121 A. 430, 431 (1923); *see also, Lafazia v. Howe*, 575 A.2d 182, 185 (1994) ("[W]e emphasized in Bloomberg that one could not 'by such a provision' escape liability for fraudulent misrepresentations. The merger and disclaimer clause in Bloomberg was

of a general, nonspecific nature."); *Travers v. Spidell*, 682 A.2d 471473-74 (R.I. Super. Ct. 1996); *Isenberg v. Jamestown Bay View Condo.*, No. NC890073, 1991 WL 789824, at *1-2 (R.I. Super. Ct. June 7, 1991). The portion of the Lease that Tapalian relies upon states:

> **23. AMENDMENT OR MODIFICATION.** The Tenant acknowledges and agrees that it has not relied upon any statement, representation, agreements or warranties except such as are expressed herein.

This is the epitome of general, non-specific language.

Significantly, Commonwealth did not anywhere in the lease disclaim reliance on representations related to the quality of the construction and renovation of the leased Premises, the timing of the conclusions of the renovations, the occupancy of the building, the landlord's willingness and ability to address problems with the Premises or any of the other specific promises and facts that Tapalian is alleged in this case to have made in order to induce Commonwealth to enter into the lease. *See, generally*, Complaint. Accordingly, nothing in the lease precludes Commonwealth's claims against Tapalian under Rhode Island law. *Bloomberg*, 121 A. at 431.

## CONLUSION

For all the foregoing reasons, Commonwealth requests that Tapalian's Motion to Dismiss be denied in its entirety.

Dated: Providence, Rhode Island
July 7, 2008

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
By its Attorneys,

/s/ Geoffrey W. Millsom

Geoffrey W. Millsom (#6483)
James A. Hall (#6167)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
Tel: (401) 274-7200
Fax: (401) 351-4607/751-0604
gmillsom@apslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing Reply To Memorandum in Support of Commonwealth's Objection to Defendant Tapalian's Motion to Dismiss through the ECF system on the 7th day of July, 2008, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No.: 08-217 ML

/s/ Geoffrey W. Millsom