UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COMMONWEALTH LAND TITLE
INSURANCE COMPANY
Plaintiff,

vs. C.A. No. 08-217 ML

M.S.I. HOLDINGS, LLC and
DAVID TAPALIAN
Defendants

# ANSWER OF DEFENDANT, DAVID TAPALIAN WITH VERIFIED COUNTERCLAIM(S)

Defendant, David Tapalian (hereinafter referred to as either "this Defendant" and/or "David"), responds to the plaintiff's complaint dated June 2, 2008, as follows:

## FIRST DEFENSE

### (Separate Paragraphs and Counts of Complaint)

### Parties, Jurisdiction and Venue

1. This defendant lacks information sufficient to form a belief concerning these allegations and leaves the plaintiff to its proof.

2. Admitted.

3. Admitted to be a "person" and not being a citizen of Nebraska or Virginia. Denied as being a current member of M.S.I. Holdings, LLC (hereinafter "M.S.I.").

4-5. These paragraphs are assertions and/or conclusions of law to which no response seems necessary, thus are taken as avoided or denied pursuant to Rule 8(d) of the Federal Rules of Civil Procedure ("F.R.C.P.").

**Factual Allegations Supposedly Relevant To All Claims**

6. David admits the general timeframe and that Commonwealth approached him about the possibility of leasing the second floor space at 100-110 North Main Street, Providence, R.I. 02903 which will be referred to as "the Premises". Answering further, this defendant admits only that David was a member of M.S.I. at that time, but denies that he was at any time its "principal" member.

7. Admitted only that discussions and negotiations took place.

8. It is denied that this defendant ever acted in a "personal" capacity, made "personal" representations, made "personal" promises and/or undertook personal obligations toward or for plaintiff. Answering further, David denies the allegations of this paragraph except that M.S.I. did indicate that it planned to renovate the Premises to be occupied by plaintiff in accordance with plans furnished by plaintiff, that there would be renovations to the entire building that would be done over the term of plaintiff's lease and (in some instances) might need Historical Society or other approvals, that M.S.I. planned to offer all floors of the building(s) to rental tenants, and that M.S.I. would complete its obligations in good faith and in accordance with the Lease Agreement ("the Lease") that was eventually executed between it and plaintiff. Answering further, this defendant (not MSI) admits that he advised MSI that his own law practice firm (independent and not part of MSI) would be moving into the building (which it has) but denies "representing" that his firm would do so before plaintiff moved to the building.

9. This defendant incorporates, by reference, his responses to the preceding paragraph concerning the "representations" alleged therein, asserts that as to those portions of paragraph eight (8) that have been admitted, he believed them to be true when made and, consequently, denies this paragraph.

10. This defendant was not party to the Lease, but the Lease and its date are admitted.

11. It is admitted that plaintiff moved into the Premises at about the time described, but the remaining allegations of this paragraph are too vague to be intelligible, thus are denied.

12. This defendant denies the allegations of this paragraph, except that the exterior of the building and its common areas had not yet undergone renovation or were in the process of renovation, thus remained essentially as seen and observed by plaintiff's representatives when they visited the Premises during negotiations before execution of the Lease, on many occasions after execution of the Lease, and up to the date of plaintiff's occupancy.

13. This defendant admits that plaintiff's floor was fit for occupancy when it moved into the Premises, admits that the building was not fully occupied, and admits that his law firm had not yet moved into the building. He also admits that the building was undergoing renovations but denies the remaining portions of this paragraph in that the Providence Water Supply Board occupied the fifth (top) floor of the 100 North Main Street building and a restaurant (Olive's) occupied a portion of the first floor of the 110 North Main Street building at the time that plaintiff first occupied the second floors of the buildings at 100-110 North Main Street, Providence.

14. David admits that M.S.I. did not complete its renovation work of the building prior to plaintiff's occupancy but denies that he was personally responsible for any renovations and denies the remaining allegations of this paragraph.

15. Denied.

16. Admitted, but many if not all of these were de minimus and M.S.I. responded promptly.

17. This defendant denies that he was a party to the lease, denies that M.S.I. acted in any manner inconsistent with its obligations under the Lease and thus denies this paragraph as pleaded.

18. This defendant. lacks information sufficient to form a belief as to several of the allegations of this lengthy, rambling paragraph, thus neither admits nor denies the same and leaves the plaintiff to its proof. To the extent that he can respond, he admits that M.S.I. undertook work on the exterior of the front of the building in about January, 2008 that required what he believes to have been lead removal and that the contractor M.S.I. hired covered all windows on all floors with plywood outside and translucent polyester sheeting inside. Despite this, high pressure forced some dust (most likely including lead particulates) through the windows on all floors. The contractor cleaned all floors and Commonwealth was the only tenant that complained and/or "relocated". Answering further, this defendant is unaware of any "lead level standards" for commercial buildings and denies the remaining portions of this paragraph.

19. This defendant is aware that "rodents" (i.e., mice) most likely entered the building during a portion of the time that plaintiff was at the Premises. Other floors experienced the same condition but used mice bait traps and/or other solutions and noticed that the mice condition was reduced and/or eliminated within a couple of weeks.

20. This defendant is aware of one instance when an HVAC element caused localized water damage to a small portion of the plaintiff's premises. He is also aware of one or more of plaintiff's employees or guests having clogged a toilet, causing major flooding to a downstairs restaurant tenant. He believes that plaintiff's negligence caused a significant disruption to the business of that restaurant (Olive's).

21. This defendant lacks information sufficient to form a belief as to the vague allegations of this paragraph, thus neither admits nor denies the same and leaves plaintiff to its proof. To the extent that they imply negligence, breach of Lease or other inappropriate conduct on the part of either this defendant or M.S.I., they are denied.

22. Denied.

**FIRST CLAIM**
(Alleged "Fraudulent Inducement")

23. This defendant restates and incorporates, by reference, his responses to such paragraphs.

24-27 Denied.

**SECOND CLAIM**
(Alleged "Breach of Contract")

28. This defendant restates and incorporates, by reference, his responses to such paragraphs.

29. Admitted.

30-32. Denied.

**THIRD CLAIM**
(Alleged "Breach of Implied Covenant of Good Faith and Fair Dealing")

33. David restates and incorporates, by reference, his responses to such paragraphs.

34. This paragraph sets forth a principle of law to which no response seems necessary, thus is taken as avoided or denied (as applied to Plaintiff and its actions) pursuant to F.R.C.P. 8(d).

35-36. Denied.

**FOURTH CLAIM**
(Alleged "Constructive Eviction")

37. This defendant restates and incorporates, by reference, his responses to such paragraphs.

38-40. Denied.

**FIFTH CLAIM**
(Alleged "Intentional Misrepresentation")

41. David restates and incorporates, by reference, his responses to such paragraphs.

42-45. Denied.

**SIXTH CLAIM**
(Alleged "Negligent Misrepresentation")

46. This defendant restates and incorporates, by reference, his responses to such paragraphs.

47-50. Denied.

**SEVENTH CLAIM**
(Alleged Right to "Declaratory Judgment")

51. This defendant restates and incorporates, by reference, his responses to such paragraphs.

52. This paragraph apparently sets forth some or all of plaintiff's contentions, but each and all of them are false, contrived, inaccurate and denied.

53. This paragraph seems to be directed solely to M.S.I., requiring no specific response by this defendant, but to the extent that it implies entitlement to relief against David he responds by denying that here was or existed any true "case or controversy" against him personally at any time, by incorporating his counterclaim herein, by reference, and replying further as follows:

**"REQUEST (sic) FOR RELIEF"**

WHEREFORE, David also demands judgment against plaintiff in each and every respect for:

A. Denial of the declaratory relief requested in that plaintiff has already terminated the Lease and now seeks the absolution of this court for its illegal acts and that, to the contrary, the Lease is valid and enforceable as prayed in M.S.I.'s counterclaim;

B. Deny damages, interest and costs to plaintiff.

C. Deny plaintiff's demand for "punitive and exemplary damages" as entirely lacking in factual and/or legal support;

D. Deny plaintiff any attorney fees;

E. Deny any and all other relief requested by plaintiff;

F. Grant David his costs of suit and reasonable attorney fees for the defense of this action (as well as the relief this defendant seeks in his counterclaim); and

G. Grant David such further relief as may be fitting, proper and just in the circumstances.

**SECOND DEFENSE**

This defendant generally denies all parts, portions, claims, demands and/or allegations of plaintiff's complaint except those designated averments he has expressly admitted in this answer.

**THIRD DEFENSE**

Plaintiff's complaint fails, in whole or in part, to state any cause or causes of action against David upon which relief may be granted.

**FOURTH DEFENSE**

Plaintiff's own actions and/or inactions are the sole and/or a contributing cause to its injuries or damages, if any.

**FIFTH DEFENSE**

Plaintiff has failed to mitigate its damages, if any, and has, in fact, caused its own damages and expenses.

**SIXTH DEFENSE**

Some or all of the damages (if any) and/or claims alleged by the plaintiff are too speculative in nature to be recoverable at law or in the alternative must be limited to those damages (if any) that are not merely hypothetical or speculative.

**SEVENTH DEFENSE**

The Lease did not grant plaintiff a right of unilateral termination, and its terms and provisions are incorporated herein, by reference.

**EIGHTH DEFENSE**

To the extent applicable, all alleged negotiations have been integrated into the Lease (see section 23) and evidence of the same is barred as improper parole evidence, thus should be stricken from the complaint notwithstanding plaintiff's disingenuous attempt to avoid that rule by claiming fraudulent inducement.

**NINTH DEFENSE**

This defendant invokes the affirmative defense of waiver as against plaintiff's claims.

**TENTH DEFENSE**

This defendant invokes the affirmative defense of illegality as against plaintiff's claims.

**ELEVENTH DEFENSE**

This defendant invokes the affirmative defense of laches as against plaintiff's claims.

**TWELFTH DEFENSE**

This defendant invokes the affirmative defense of estoppel as against plaintiff's claims.

**THIRTEENTH DEFENSE**

This defendant invokes the affirmative defense of unclean hands as against plaintiff's claims.

**FOURTEENTH DEFENSE**

This defendant invokes the affirmative defense of M.S.I.'s substantial performance of the Lease as against plaintiff's claims.

**FIFTEENTH DEFENSE**

This defendant reserves all further pleas, defenses, set-offs, and/or other responsive pleadings that may result from his learning or discovering information currently unknown to him but which appears during the course discovery, trial or otherwise.

WHEREFORE, David demands judgment against plaintiff, with costs, reasonable attorney fees, the relief described above, and a trial, by jury.

David Tapalian
By his Attorney,

_/s/ John B. Reilly_______________
John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Tel.: (401) 272-2800
Fax: (401) 272-2811

**VERIFIED COUNTERCLAIM(S)**

**Parties**

1. Defendant and counterclaim plaintiff, David Tapalian (hereinafter, "David") is a resident and citizen of the Commonwealth of Massachusetts.

2. David was (but as of the time of the filing of plaintiff's complaint was no longer) a minority member of M.S.I. Holdings, LLC ("M.S.I.") which maintains its principal place of business at 100 North Main Street, Providence, Rhode Island and is a Rhode Island Limited Liability Company that is a citizen of the State of Rhode Island.

3. Upon information and belief, plaintiff and counterclaim defendant, Commonwealth Land Title Insurance Company (hereinafter, "Commonwealth") is a business corporation organized and existing under the laws of the State of Nebraska and is not a citizen of Rhode Island.

4. Upon information and belief, Commonwealth maintains its principal place of business in the Commonwealth of Virginia and is a citizen of either Nebraska or Virginia.

## Jurisdiction and Venue

5. This court has jurisdiction over these counterclaims due to the complete diversity of citizenship of the parties (M.S.I. has not, as an in-state citizen and defendant, removed the matter from a State Court) and requisite amount in controversy (more than $75,000.00, exclusive of interest and costs) pursuant to 28 U.S.C.§ 1332.

6. Jurisdiction also exists in this court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

7. Venue is appropriate in this district in that the events described herein mostly occurred and/or had their effect in the District of Rhode Island. See 28 U.S.C. § 1391 (b)

## Factual Background

8. M.S.I. has at all relevant times been the owner of the buildings located at 100-110 North Main Street, Providence, R.I. 02903 (hereinafter, "the building").

9. Upon information and belief, the building was constructed and/or first opened in (approximately) the year 1875 and is on the National Register of Historical Buildings.

10. In 2006, David was a minority member of M.S.I. and also practiced law with the firm Tapalian & Tadros, P.C. which had its principal office and place of business in Providence, Rhode Island.

11. In 2006 and for various periods of time before and after that year, Tapalian & Tadros, P.C. and Commonwealth worked with one another with respect to real estate closings and the issuance of title policies related to such real estate transactions.

12. In 2006, one of Commonwealth's local representatives, Albert Antonio ("Antonio") advised David that Commonwealth was looking for office space.

13. David informed Antonio about M.S.I., that David's father was M.S.I.'s principal member, that M.S.I.' owned buildings at 100-110 North Main Street, that the buildings had an adjacent parking lot, that the buildings were going to undergo extensive renovation work and eventually showed Antonio the buildings and, in particular, the second floors of the buildings.

14. At the time of Antonio's site visit, it was obvious that extensive work was going to be required to renovate the building and David gave Antonio a general description of M.S.I.'s intentions as he believed them to be at that time.

15. David also told Antonio that the Tapalian & Tadros law firm would be moving to the third floor of the building once it was renovated.

16. Antonio expressed an interest in the second floor but explained that he had to contact Commonwealth's corporate offices to determine what steps could be taken to proceed with building out the space and entering into a lease agreement.

17. On or about August 10, 2006, another Commonwealth representative, Ruth Eggleston ("Eggleston"), sent David a summary of Commonwealth's requirements for the renovation of the second floor space.

18. There followed a series of discussions, communications, drawings, revisions, and the exchange of draft lease agreements, and at all such times David acted as attorney for M.S.I.

19. On or about September 27, 2006, M.S.I. (as Landlord) and Commonwealth (as Tenant) entered into the Lease agreement referenced in Commonwealth's Complaint ("the Lease").

20. A true and accurate copy of the body of the Lease appears at **Exhibit "A"** to M.S.I.'s answer to plaintiff's complaint and is incorporated herein, by reference.

21. Copies of the exhibits to the Lease appear at **Exhibit "B"** to M.S.I.'s answer to plaintiff's complaint and consist of a description of the Premises, work agreement for completion of the Premises, and quarterly monitoring report from Lincoln Environmental (designated as Lease Exhibits A through C, respectively). These exhibits to the Lease are also incorporated herein, by reference.

22. To prepare the second floor space for Commonwealth, M.S.I. first obtained appropriate permits, did extensive demolition, and constructed the space in accordance with the floor plan and design approved by Commonwealth.

23. Upon information and belief, during construction of the second floor premises Commonwealth representatives visited the building and both observed and were aware of the status of its overall condition.

24. At the conclusion of renovations and following official inspections, the City of Providence issued a Certificate of Use and Occupancy was for the second floor space and in about January 2007, Commonwealth moved into and accepted possession of the Premises.

25. At the time that Commonwealth moved into its space, renovations to the third floor space that would eventually be occupied by Tapalian & Tadros, P.C. had begun but was not completed and Commonwealth's representatives were aware of the status of that work.

26. On or about July 19, 2007, a Commonwealth representative named Carter Tatum ("Tatum") wrote to David, thanking him for M.S.I.'s "attentiveness overall the past several weeks addressing the punch list items and maintenance issues at (the Premises)." Further, Mr. Tatum indicated that as of the time of his message, Commonwealth was "satisfied with the work that has been done and the space," but pointed out a few other concerns.

27. Upon information and belief, Mr. Tatum's concerns were addressed in a reasonably prompt manner.

28. In June 2007, the air conditioning unit for the Premises leaked, causing some water damage and subsequently needed maintenance from time to time. M.S.I. continuously worked to correct any and all issues relating to the same.

29. Numbered paragraph or section six (6) of the Lease indicates that Commonwealth was and is "aware that there improvements that will be made to the building interior and exterior, while (Commonwealth) occupies the premises, and (Commonwealth) will be understanding as to this fact as (M.S.I) will attempt to perform such work with the greatest of care so as not to disturb tenant."

30. During the period of approximately December 2007 – February 2008, the renovation plans for the building included work on its exterior front side and M.S.I. obtained appropriate permits to do the same since it was learned that portions of the exterior were apparently covered with lead-based paint.

31. All windows on the second, third and fourth floors of the front side of the building were boarded up on the outside and covered with a translucent vinyl wrap on the inside to attempt to avoid penetration of lead or other foreign particulates into the interior of the Commonwealth Premises and other areas of the building.

32. Notwithstanding such precautions, the high pressure system utilized by the Contractor caused lead and/or other particulates to penetrate the Premises and other areas of the building (including the occupied fourth floor).

33. The Contractor and M.S.I. attempted to monitor and clean these conditions as soon after they occurred as possible.

34. Commonwealth removed its personnel from the Premises, claiming that these conditions were hazardous to the health of its employees.

35. M.S.I. hired Silva Environmental & Associates Inc. ("Silva") of Warwick, Rhode Island, to inspect and sample the second floor (premises) area.

36. In a report dated January 16, 2008, Silva concluded that the Premises was safe for occupancy. Furthermore, it opined that the Premises and its type of use (i.e. no children, no sleeping facilities, etc.) were of a type that would not be subject to regulation under the Rhode Island Rules and Regulations for Lead Poisoning Prevention, H.U.D. and/or E.P.A. standards.

37. Additionally, M.S.I. engaged the services of an industrial hygienist who concluded that Commonwealth's claims concerning the existence of "significant health hazards to its employees" were not adequately supported by their own assumptions and testing.

38. The fourth floor tenant remained in the building throughout this work and Commonwealth moved back into the building following the exchange of reports.

39. Throughout the time of Commonwealth's occupancy of the Premises, M.S.I. has endeavored to move forward with exterior and interior renovations of the building. Due to the historical nature of the building and involvement of its own architects as well as the need for review and approval by the Providence Revolving Fund, numerous delays have ensued. Nevertheless, the work has continued and is continuing.

40. Tapalian & Tadros moved its law firm to the building, at which point the second, third and fourth floors were occupied.

41. Upon information and belief, a precipitous downward change in the real estate market required Commonwealth to downsize its business operations and layoff and/or terminate some employees.

42. In April 2008, another Commonwealth representative named Maria DaSilva ("DaSilva") contacted David and arranged for a meeting.

43. Ms. DaSilva visited the building, was shown the progress that was being made and indicated that she and/or some other Commonwealth representative would be presenting another "punch list."

44. Ms. DaSilva also inquired about "buying out" Commonwealth's remaining lease obligation.

45. Neither David nor M.S.I. received a new "punch list".

46. Neither David nor M.S.I. received an offer to "buy out" Commonwealth's remaining obligations under the Lease.

47. During the period of approximately May 28 – 31, 2008, Commonwealth evacuated and abandoned the Premises, without notice. It not only removed its furniture but also the alarm system and returned the keys to the Premises.

48. By letter dated June 2, 2008 (copy at **Exhibit "C"** to M.S.I.'s answer to the complaint), Commonwealth (through counsel) contended that the Lease was "void, invalid and unenforceable" due to "fraudulent inducement and misrepresentations" and other breaches, including (apparently) an alleged breach of paragraph 12(b) of the Lease.

49. Commonwealth had never before complained about "fraudulent inducement and misrepresentations" but has moved, stopped paying rent, and evidenced its plan to never return to the Premises or further perform its obligations under the Lease in any manner whatsoever.

50. Before filing its complaint plaintiff had public access to the Rhode Island Secretary of State's records and had plaintiff searched those records it would have seen that in its then most recent annual report, M.S.I. listed David as its registered agent, proclaimed David's "title" (for contact purposes) as "lawyer", and that such report (dated September 4, 2007) was signed by David's father as the "Authorized Person" signing the report for M.S.I.. A copy of this public information is appended as **Exhibit "D"** and is incorporated herein, by reference.

51. All previous paragraphs of this Counterclaim (and those exhibits to M.S.I.'s answer to the complaint) are restated and incorporated, by reference, in each Count that follows.

**COUNT I**

(Abuse of Process)

52. The actions of Commonwealth in filing this action and serving summons upon David were undertaken for improper and illegitimate reasons unrelated to the purported relief claimed in its complaint and without reasonable belief in the truth of the allegations contained in its complaint, thus constitute a form of attempted extortion and an abuse of legal process.

53. As a result of Commonwealth's actions, David is entitled to compensatory and exemplary or punitive damages.

WHEREFORE, David demands judgment against Commonwealth for compensatory and exemplary or punitive damages, plus interest, costs and reasonable attorney fees.

**COUNT II**

(Declaratory Relief)

54. To the extent necessary, this court has jurisdiction to declare the rights, obligations and relations of the parties pursuant to 28 U.S.C.§2201, *et seq*.

55. Under the circumstances, David, in his capacity as a minority member of M.S.I. at the times before execution of the Lease described by plaintiff in its complaint, respectfully requests that this court exercise that jurisdiction and in doing so that it:

A. Construe the Lease and all terms and provisions thereof;

B. Declare that the Lease has not been altered, amended or changed in any way since its execution;

C. Declare that section 23 of the Lease (wherein it is acknowledged that Commonwealth "acknowledges and agrees that it has not relied upon any statement, representation, agreements or warranties except as expressed (in the Lease)" was negotiated at "arm's length" by sophisticated parties and thus precludes parole evidence about the "misrepresentations" and "inducements" described in plaintiff's complaint;

D. Adjudge and declare that there exists no independent, equitable basis upon or for which either M.S.I. and/or David should be obligated to Commonwealth under the Lease or otherwise.

E. Construe the law and matters in question and determine the rights and obligations of the parties; and

F. Grant David such further relief as may be fitting, just and appropriate in the circumstances.

**COUNT VII**
(Attorney Fees)

56. In the circumstances, David is entitled to the attorney fees and costs provided by the terms of the Lease.

WHEREFORE, David demands judgment against Commonwealth for his costs and attorney fees pursuant to the Lease.

David Tapalian,
By his Attorney,

/s/ John B. Reilly

John B. Reilly, Esq. (#1811)
John Reilly & Associates
100 North Main Street, 4th Floor
Providence, Rhode Island 02903
Tel.: (401) 272-2800
Fax: (401) 272-2811

**CERTIFICATION**

It is hereby certified that on the 25th day of August, 2008, a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record will receive notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Geoffrey W. Millsom, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443
gmillsom@apslaw.com

James A. Hall, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443
jhall@apslaw.com

It is also hereby certified that a true copy of the within will be sent by first-class mail, postage prepaid on this 25th day of August, 2008 to the following counsel of record:

Stanley J. Kanter, Esq.
ADLER, POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, R.I. 02903-2443

/s/ John B. Reilly